[No. 62937-9-I.   Division One.   June 27, 2011.]

KING COUNTY DEPARTMENT OF ADULT AND JUVENILE DETENTION, *Respondent*, v. ALLAN PARMELEE, *Appellant*.

340

*Allan Parmelee*, pro se.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Nancy A. Balin, Deputy*, for respondent.

¶1 Cox, J. — Allan Parmelee appeals from two successive permanent injunctions. They enjoin a governmental agency from allowing him to inspect and copy public records that he sought under the Public Records Act (PRA), chapter 42.56 RCW. We hold that the trial court properly enjoined access to nonexempt public records pursuant to RCW 42.56.565 in the second injunction. Because the relief that Parmelee requests with respect to the first injunction is unavailable due to the issuance of the second injunction, we decline to address his challenges to the first injunction. Parmelee also challenges other orders of the trial court. These challenges are not meritorious. We affirm.[1]

---

[1] We deny Parmelee's motion to strike supplementation of the record, filed in this court on December 30, 2010. To the extent that Parmelee's "Notice of Change

¶2 Parmelee has a long history of harassing and threatening government employees with personal information obtained through various avenues, including the PRA.[2] His tactics include publishing private information on public web sites, issuing "press releases" and other media about alleged improprieties by government employees, and filing administrative grievances and lawsuits.

¶3 Parmelee has been involved in several PRA cases involving Washington State agencies. For example, Parmelee submitted 223 separate PRA requests to the Department of Corrections (DOC) between 2001 and 2007. These requests primarily sought personal information about specific DOC employees or information about all DOC employees at a specific location. Based on Parmelee's stated intent to use this information to intimidate, harass, slander, and harm DOC employees, a number of superior courts have issued permanent injunctions prohibiting him from obtaining the requested information.[3] On review, some of these injunctions were vacated and the cases remanded for further consideration. But the factual background of these cases provides context for our analysis.

¶4 Division Two of this court recently described some of this context in *DeLong v. Parmelee*:[4]

> In 2004, a jury found Parmelee guilty of two counts of first degree arson for the fire-bombing of two automobiles belonging to attorneys opposing him in two separate civil legal actions. Parmelee fire-bombed the automobiles at the attorneys' respective residences. Prior to the first attack, Parmelee posted the attorneys' home addresses on a web site he created to complain about court rulings in his custody and dissolution dispute with

in Authority Relied Upon and Supplemental Authority," dated May 9, 2011, is a motion to stay consideration of this case, we deny the motion.

[2] We hereby order consolidation of the record on appeal in *King County Sheriff's Office v. Parmelee*, case no. 62938-7-I, with the record on appeal in this case.

[3] *See, e.g., Burt v. Dep't of Corr.*, 168 Wn.2d 828, 231 P.3d 191 (2010); *Parmelee v. Dep't of Corr.*, noted at 161 Wn. App. 1015, 2011 WL 1631722, 2011 Wash. App. LEXIS 931; *DeLong v. Parmelee*, 157 Wn. App. 119, 236 P.3d 936 (2010), *remanded for recon.*, 171 Wn.2d 1004, 248 P.3d 1042 (2011).

[4] 157 Wn. App. 119, 236 P.3d 936 (2010).

the victims' client, Parmelee's former wife. On that web site, Parmelee "invited" other disgruntled fathers to pay the attorney victim "a visit."

In addition, Parmelee's first criminal trial on the arson charges resulted in a mistrial because the superior court discovered that Parmelee possessed materials with discrete personal information about the jurors who had been impaneled. The trial court found that Parmelee had secreted this information in direct violation of a superior court order that he not retain any information on jurors. After the jury found him guilty, Parmelee expressed extreme hostility toward the judge and subsequently sought the judge's photograph from the Washington State Bar Association.

Parmelee has written several letters to DOC staff stating that he intends to misuse information that he receives about DOC staff. He has also made comments that DOC staff have interpreted as thinly veiled threats against them and their families.

On July 20, 2005, Parmelee wrote a letter to DOC Secretary Harold Clarke in which he referred to former Clallam Bay Correctional Center (CBCC) Superintendent Sandra Carter as an "anti-male . . . lesbian," and Associate Superintendent John Aldana as an "antagonist." Parmelee went on to state that "[h]aving a man-hater lesbian as a superintendent is like throwing gas on already smouldering [sic] fire." Parmelee asked Clarke for his "thoughts on this so [Parmelee could] conclude a series of media releases [he had] planned about CBCC."

On October 8, 2005, Parmelee wrote a letter to Carter, which stated,

> I have initiated investigators to possibly interview your neighbors, photograph your home and conduct a detailed due diligence into any actual or potential parties or witnesses to lawsuits. Some of the information will be interpreted and posted on the internet to make it easier for others to sue you people also, and to let the public know what type of people their taxes pay.
>
> . . . .
>
> . . . I already have some of your home addresses (for a dollar each) and now await the video and photographs. You

want to conduct yourselves like official crooks, [sic] you deserve the publicity that comes with it.

. . . .

This letter is not intended to threaten, intimidate or coerce anyone. It is intended to simply put you on notice so you won't jump to the wrong conclusion when you see a photographer or video camera operator around yours [sic] or your staff's homes.

On March 19, 2006, CBCC staff confiscated a letter from Parmelee's cell addressed to Maxwell Tomlinson of Max Investigations. In that letter, Parmelee referred to past and future plans to send people on his behalf to CBCC staff members' homes or to follow them, indicating, "I'll have to call through another as we've done before. As usual bill me through the usual source, up to $2,000.00 per lot that I will pre-approve." Parmelee went on to state that "[s]everal prison staff are defendants in lawsuits and I want them followed and photographed, and all the public records you can find, including SS's, DC's, and vehicle licenses, codes and pictures of them, their homes, and vehicles." Parmelee identified 20 DOC employees he wanted Tomlinson to follow. He then went on to state,

I also propose that when we get ready to move forward, that your material not only be posted on the internet for other prisoners to access, but to hire some legal talent to enforce security and to prevent these inbred bullies from causing too much more trouble. Be careful, as we're dealing with people whose thought processes are defective and base. You may need a few bullies of your own. CR-4 service will be required.

On July 9, 2006, Parmelee wrote another letter to Carter informing her that he had hired picketers to picket the homes of DOC employees. He stated that he had hired individuals for

$2,000.00 per weekend to picket peacefully [outside] some DOC staff's residences and hand out information brochures about DOC employees to the neighbors. . . . These pickets are planned for Olympia DOC people whom [sic] may be in the dark about what's going on here and how bad things really are. They are also planned to occur at your CBCC staff's residences, which one(s) and when will not be revealed until a day or so in advance to the media.

On July 11, 2006, Parmelee received a serious infraction at CBCC when he handed a DOC employee a mock-up of a flyer containing the names of several DOC staff members. Parmelee told the employee, "These are the flyers that I am having printed and passed out tomorrow and if you don't stay out of it your dead bitch will be on one of them."

The flyer Parmelee gave the correctional officer is entitled "SEXUAL PREDITORS [sic] IN YOUR NEIGHBORHOOD" and lists the names of six DOC employees. Above each DOC employee's name is a rough outline of a picture of that individual with "insert actual photos here as designated" written across one of the sketches. The flyer states in relevant part,

> These sexual preditors [sic] . . . work at the Clallam Bay prison where homosexual assaults are encouraged against prisoners by Sandra Carter, the gay feminist superintendent. Protect Your Families and Children. Demand The [DOC] Fire These People Now Before You Become Their Next Victim.[5]

¶5 Here, Parmelee exhibited similar behavior to that described in *DeLong* toward employees of the King County Department of Adult and Juvenile Detention (DAJD). In 2001, Parmelee was found in possession of a self-drawn diagram of the King County jail with notations indicating which areas to bomb. Twice in 2004, DAJD employees found a razor blade mixed in with Parmelee's legal papers when they were cleaning his cell. Parmelee has also physically assaulted DAJD employees on at least 13 occasions.

¶6 Parmelee also has a history of threatening DAJD employees. In 2001, Parmelee wrote a letter to the Corrections Program Administrator (CPA) stating, "I realize you enjoy threatening me because it happens so often. Don't worry, the score will be evened one day. . . . Till Death. AP."[6]

---

[5] *Id.* at 132-35 (alterations in original) (citations omitted). The supreme court remanded this case for reconsideration in light of *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 243 P.3d 919 (2010) and RCW 42.56.565.

[6] Clerk's Papers at 931.

¶7 While incarcerated at King County jail, Parmelee filed numerous grievances about DAJD employees. These grievances included the following express and implied threats. "Fire this idiot because it's people like him that get beat up when their backup isn't present."[7] "Fire these stupid idiots before this harassment escalates into violence and someone gets hurt . . . . Pay me money."[8] "Fire these stupid idiots . . . . [P]ay me money. This is how guards get beat up."[9] "He . . . wants someone to hunt him down and beat his ass . . . . [C]ease this conduct or I'll resolve this using other means."[10] "Perhaps what she wants is for me to send these to her home. Is that what you're pushing for?"[11]

¶8 In a grievance response letter, Parmelee wrote,

> I admit telling Porter that I would put pictures of his [and other jail employees] residences, cars, themselves, and a wide variety of other personal information, all publicly available on the internet. . . . I am aware that past persons on this web site have had problems. . . . Although it is common knowledge, public information may "fuck up someone's life," that's the price society pays for electronic and free information. I will put up many jail staff's publically available personal information, and any secondary paranoia or unproven relationship to problems they have are coincidental. Enjoy the publicity.[12]

¶9 In addition to the threats in his written grievance reports, Parmelee verbally threatened to visit DAJD employees at home. On September 5, 2002, Parmelee told the CPA that he would "watch his home and get him."[13] On November 3, 2002, Parmelee asked the CPA, "Did you see that small black car drive by your house last Saturday

---

[7] Clerk's Papers at 933.

[8] Clerk's Papers at 934.

[9] Clerk's Papers at 936.

[10] Clerk's Papers at 943.

[11] Clerk's Papers at 968.

[12] Clerk's Papers at 979-80.

[13] Clerk's Papers at 957.

evening?"[14] On April 17, 2004, Parmelee asked a corrections officer, "Do you want someone to come to your house?" And on May 18, 2004, Parmelee told a corrections officer that he knew his home address and would use that information to "get" him.[15]

¶10 Finally, on multiple occasions, documents containing the names and addresses of DAJD employees were found either in Parmelee's possession or in his handwriting.

¶11 On May 12 and 26, 2008, Parmelee made six separate requests under the PRA to the DAJD for information and records. These requests sought the following information about DAJD employees:

1. First, middle, and last name (including hyphenated, changed, and maiden names);

2. Date of birth;

3. Gender;

4. Race;

5. Height and weight;

6. Date of hire, job title, annual pay/rate of pay;

7. Employment identification number;

8. Information related to special training;

9. Employment evaluations, discipline, and termination records;

10. Photographs (in electronic format and including metadata);

11. E-mail addresses;

12. Direct phone number, pager number, and cell phone number; and

---

[14] Clerk's Papers at 959.

[15] Clerk's Papers at 975.

> 13. All reports, investigation records, photographs, administrative grievances, e-mails, letters, and memos related to "sex-by-guards."[16]

¶12 DAJD commenced this action for declaratory and injunctive relief on behalf of the employees who were the subjects of Parmelee's public disclosure requests. Parmelee filed his answer and also moved for relief in several respects. He sought in camera review of the records at issue, consolidation of this case with a similar case filed by the King County Sheriff's Office, and striking of what he characterized as "redundant, inmaterial [sic], impertinent and scandalous" matter in DAJD's complaint. Thereafter, DAJD moved for a permanent injunction, requesting that the court permanently enjoin it from releasing records to Parmelee that contained employee photographs, dates of birth, gender, race, height and weight, and direct phone, cell phone, and pager numbers.

¶13 The court granted DAJD's motion to enjoin the release of employee photographs, dates of birth, gender, race, height and weight, and direct phone, cell phone, and pager numbers. The court also entered findings of fact and conclusions of law supporting issuance of this injunction. The court denied DAJD's motion for a blanket injunction with respect to other records.

¶14 In the same order, the court denied Parmelee's motion to consolidate and motion to strike DAJD's pleadings. The court also denied Parmelee's motion for in camera review of the records, with the exception that the court reviewed a single photograph and related metadata to determine whether it contained any information subject to public disclosure.

¶15 The court concluded by separate order that some of the photo metadata was subject to disclosure and some was not. Specifically, the court found that the employees' names, dates of hire, titles, departments, and divisions were subject to disclosure. The court concluded that all other

---

[16] Clerk's Papers at 892-97.

information contained in the photo metadata was not subject to disclosure.

¶16 Parmelee timely filed his notice of appeal of this injunction.

¶17 In March 2009, the Legislature amended the PRA.[17] The new section is codified at RCW 42.56.565. It expressly authorizes courts to enjoin the inspection and copying of nonexempt public records by prisoners, provided the court finds that:

(i) The request was made to harass or intimidate the agency or its employees;

(ii) Fulfilling the request would likely threaten the security of correctional facilities;

(iii) Fulfilling the request would likely threaten the safety or security of staff, inmates, family members of staff, family members of other inmates, or any other person; or

(iv) Fulfilling the request may assist criminal activity.[18]

¶18 Following the March 20, 2009, effective date of this amendment, King County and the King County Prosecuting Attorney's Office (collectively PAO), filed a motion for injunctive relief against Parmelee under a separate case number from this action. PAO sought to enjoin any past, pending, or future public records requests by Parmelee for the remainder of his incarceration. DAJD moved to join in the PAO motion. Parmelee opposed the motion, moved for discovery, and moved to strike DAJD's motion for joinder.

¶19 On August 25, 2009, the trial court entered findings of fact, conclusions of law, and an order enjoining all pending and future public records requests by Parmelee to DAJD for the remainder of his incarceration under RCW 42.56.565. The trial court also denied Parmelee's motion for discovery and motion to strike.

¶20 DAJD then moved to supplement the trial court record in this case with the PAO motion for injunction and

---

[17] *See* Laws of 2009, ch. 10 (codified at RCW 42.56.565).

[18] RCW 42.56.565(1)(c).

supporting declarations on which the trial court relied in granting the second injunction. The trial court subsequently granted DAJD's motion to supplement the record.

¶21 Parmelee filed a supplemental notice of appeal seeking review of the trial court's second injunction. This court consolidated the two appeals.

## RCW 42.56.565 INJUNCTION

¶22 We first address Parmelee's challenges to the second injunction that the court issued pursuant to RCW 42.56-.565, the March 20, 2009, amendment to the PRA. Parmelee primarily argues that the statute was improperly applied retroactively and that RCW 42.56.565 is unconstitutional on several bases. We disagree with these arguments.

¶23 The PRA makes all "public records" available for public inspection and copying unless the record falls within a specific exemption.[19] The PRA is a " 'strongly worded mandate for broad disclosure of public records' " and should be "liberally construed to promote full access to public records, and its exemptions are to be narrowly construed."[20] The PRA also provides that persons named in a request for records or to whom the requested record specifically pertains may move to enjoin the release of the requested records under RCW 42.56.540 or RCW 42.56.565.

¶24 The superior court may issue an injunction under RCW 42.56.540 if the requested records "fall within specific exemptions found elsewhere in the Act"[21] and "examination would clearly not be in the public interest and would

---

[19] *Fischer v. Dep't of Corr.*, 160 Wn. App. 722, 724-25, 254 P.3d 824 (2011) (citing *Lindeman v. Kelso Sch. Dist. No. 458*, 162 Wn.2d 196, 201, 172 P.3d 329 (2007); RCW 42.56.070(1)).

[20] *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (*PAWS*)).

[21] *PAWS*, 125 Wn.2d at 257-58 (emphasis omitted).

substantially and irreparably damage any person."[22] Under RCW 42.56.565, the superior court may issue an injunction if the requestor is currently in prison and it finds that the request was made to harass or intimidate an agency or its employees or that fulfilling the request would cause one of the other enumerated harms identified in the statute.[23]

■ ¶25 We review de novo injunctions issued under the PRA.[24]

### Retroactivity

¶26 Parmelee argues that the trial court improperly applied RCW 42.56.565 retroactively "because it strips away rights to previous transactions without a statutory provision to do so." We conclude that the statute was not applied retroactively on this record.

¶27 The Legislature amended the PRA to add the provisions codified as RCW 42.56.565, and this amendment became effective on March 20, 2009.[25]

■ ■ ¶28 The threshold question is whether retroactivity is even at issue on this record. Parmelee appears to argue that the court enjoined the release of records responsive to requests that predate the effective date of RCW 42.56.565. But he fails to cite to the portion of this voluminous record on appeal that supports this claim. Likewise, DAJD does not fill this void, making other arguments why we should reject this claim.[26]

¶29 We will not speculate on whether the court's injunction applies to requests made before the effective date of the amendment. We note that in its motion to join PAO's

---

[22] RCW 42.56.540.

[23] RCW 42.56.565(1)(c).

[24] *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn. App. 433, 441, 161 P.3d 428 (2007) (citing *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35, 769 P.2d 283 (1989)).

[25] *See* LAWS OF 2009, ch. 10 (codified at RCW 42.56.565).

[26] Brief of Respondent at 36-39.

motion for injunctive relief under RCW 42.56.565, DAJD requested "that all past, pending, and future PRA requests from [Parmelee] to [DAJD] be enjoined for the duration of his incarceration."[27] But this one page motion did not identify what past records were at issue or whether they were requested before or after the effective date of the amendment.

¶30 Finally, and most importantly, the trial court did not identify any preamendment PRA requests from Parmelee in its order granting injunctive relief. That order specifically addresses requests made on June 18 and 22, 2009, after the March 20, 2009, effective date of the amendment. The three other categories of requests in the order do not specify when they were made.

¶31 Given the lack of clarity in this voluminous record whether there is any retroactivity issue, we decline to consider this argument any further.

¶32 Parmelee next makes several arguments that challenge the constitutionality of RCW 42.56.565 in various ways. We consider each of these arguments in turn and reject them all.

■ ■ ¶33 We presume that a statute is constitutional and the challenging party bears the burden of proving, beyond a reasonable doubt, its unconstitutionality.[28] We review de novo a challenge to the constitutionality of a statute.[29]

*Due Process*

¶34 Without citation to or discussion of any relevant authority, Parmelee claims that the "preponderance of the evidence" standard in RCW 42.56.565(3), stating the evi-

---

[27] Clerk's Papers at 1066.

[28] *State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 335, 12 P.3d 134 (2000).

[29] *State v. Williams*, 159 Wn. App. 298, 319, 244 P.3d 1018 (citing *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999)), *review denied*, 171 Wn.2d 1025 (2011).

dentiary standard for proceedings to enjoin access to public records, violates due process.

■■ ¶35 We note that "[p]arties raising constitutional issues must present considered arguments to this court."[30] " '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' "[31]

¶36 This claim is unsupported by any considered argument. Accordingly, we decline to consider it further.

¶37 We are left with the question whether due process applies to any of his remaining claims. We conclude that it does not.

■ ¶38 The Fourteenth Amendment's due process clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[32] A person alleging a violation of his right to due process must establish that he was deprived of an interest cognizable under the due process clause.[33]

■ ■ ¶39 " 'A liberty interest may arise from the Constitution,' from 'guarantees implicit in the word "liberty," ' or 'from an expectation or interest created by state laws or policies.' "[34] However, for a statute to "create a liberty interest, it must contain 'substantive predicates' to the exercise of discretion and 'specific directives to the decisionmaker that if the regulations' substantive predi-

---

[30] *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

[31] *Id.* (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)).

[32] U.S. CONST. amend. XIV, § 1.

[33] *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

[34] *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 737, 214 P.3d 141 (2009) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Bush*, 164 Wn.2d 697, 702, 193 P.3d 103 (2008)).

cates are present, a particular outcome must follow'."[35] "Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot."[36]

¶40 Here, Parmelee has not cited any authority to show that the PRA creates a constitutionally protected liberty interest.[37] We assume he has found none.

¶41 In any event, Division Two of this court recently concluded that the PRA "merely creates [a] procedure, it does not create a liberty interest."[38] This is consistent with the supreme court's recent observation that a request for injunctive relief under the PRA is procedural, not substantive.[39]

¶42 Moreover, RCW 42.56.565 does not direct a specific result. Rather, it grants the trial court considerable discretion in determining whether to grant an injunction based on the facts presented.

¶43 For all these reasons, we conclude that the statute does not create a liberty interest that is subject to due process protections.

---

[35] *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 144, 866 P.2d 8 (1994) (quoting *Thompson*, 490 U.S. at 463; *Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir.), *cert. denied*, 510 U.S. 999 (1993)).

[36] *Id.*

[37] RAP 10.3(a)(6); *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (" 'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.' " (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962))).

[38] *DeLong*, 157 Wn. App. at 163 (citing *Cashaw*, 123 Wn.2d at 146).

[39] *See Serko*, 170 Wn.2d at 597 (commenting on RCW 42.56.540, which provides for injunctive relief under the PRA); *see also Proctor v. White Lake Twp. Police Dep't*, 248 Mich. App. 457, 465, 639 N.W.2d 332 (2001) (holding inmates' exclusion from seeking public documents under state Freedom of Information Act (FOIA) does not implicate constitutional rights).

## Vagueness and Overbreadth

¶44 Parmelee argues that RCW 42.56.565 is vague and overbroad, chilling constitutionally protected free speech activities. We disagree.

¶45 A statute is unconstitutionally vague if it " 'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed' " or it " 'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.' "[40] When determining whether a statute provides fair warning of the proscribed conduct, we examine the context of the entire enactment, giving the language a "sensible, meaningful, and practical interpretation."[41] We do not, however, require absolute specificity.[42] "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct."[43]

¶46 Parmelee appears to argue that RCW 42.56.565 is unconstitutionally vague because it does not precisely define what evidence is sufficient to satisfy the moving party's burden when seeking an injunction. A challenged statute is unconstitutionally vague only if its terms " 'are so loose and obscure that they cannot be clearly applied in any context.' "[44]

---

[40] *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001) (internal quotation marks omitted) (quoting *City of Bellevue v. Lorang*, 140 Wn.2d 19, 30, 992 P.2d 496 (2000)).

[41] *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693 (1990).

[42] *Id.* at 179.

[43] *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988).

[44] *State v. Sullivan*, 143 Wn.2d 162, 183, 19 P.3d 1012 (2001) (internal quotation marks omitted) (quoting *Weden v. San Juan County*, 135 Wn.2d 678, 708, 958 P.2d 273 (1998)).

¶47 The terms at issue here are not so loose and obscure that a trial court would be unable to apply them.[45] To the contrary, the terms that Parmelee challenges, such as "would likely" and "may assist," are commonly understood terms that are regularly applied by courts in the context of statutory interpretation. In addition, the non-exclusive list of factors that may support an injunction in subsection (2) of the statute clearly describe the kind of conduct that the statute is intended to deter.[46] These factors are not unconstitutionally vague.

¶48 Parmelee also argues that the statute is unconstitutionally vague because it does not adequately notify an incarcerated records requestor what types of records requests he is not permitted to make. This argument also fails.

¶49 The statute does not prohibit a prisoner from making PRA requests. Rather, it permits a court to enjoin a

---

[45] RCW 42.56.565(1)(c) provides:

In order to issue an injunction, the court must find that:

(i) The request was made to harass or intimidate the agency or its employees;

(ii) Fulfilling the request *would likely* threaten the security of correctional facilities;

(iii) Fulfilling the request *would likely* threaten the safety or security of staff, inmates, family members of staff, family members of other inmates, or any other person; or

(iv) Fulfilling the request *may assist* criminal activity.

(Emphasis added.)

[46] RCW 42.56.565(2) provides:

In deciding whether to enjoin a request under subsection (1) of this section, the court may consider all relevant factors including, but not limited to:

(a) Other requests by the requestor;

(b) The type of record or records sought;

(c) Statements offered by the requestor concerning the purpose for the request;

(d) Whether disclosure of the requested records would likely harm any person or vital government interest;

(e) Whether the request seeks a significant and burdensome number of documents;

(f) The impact of disclosure on correctional facility security and order, the safety or security of correctional facility staff, inmates, or others; and

(g) The deterrence of criminal activity.

prisoner from obtaining access to nonexempt public records if the court finds (1) the request was made to harass or intimidate a public agency or its employees; (2) fulfilling the request would likely threaten the security of a correctional facility; (3) fulfilling the request would likely threaten the safety or security of staff, inmates, or other persons; or (4) fulfilling the request may assist criminal activity.[47] Giving this language a "sensible, meaningful, and practical interpretation," the statute is not subject to a vagueness challenge.

¶50 Parmelee also argues that RCW 42.56.565 is overbroad. He is mistaken.

¶51 A statute is overbroad if it chills or sweeps within its prohibition constitutionally protected free speech activities.[48] A statute that regulates behavior, and not pure speech, will not be overturned as overbroad unless the challenging party shows the overbreadth is both real and substantial in relation to the statute's plainly legitimate sweep.[49]

¶52 The first inquiry in the overbreadth analysis is whether the statute prohibits a substantial amount of constitutionally protected speech.[50] As we have discussed in this opinion, RCW 42.56.565 creates a procedure whereby an agency or individual that is the subject of a public records request may seek to enjoin the release of the requested records under narrow circumstances. Parmelee appears to argue that this constitutes a restriction on speech because it deters publication of government records and permits the agency to deny records based on the type of records requested. But, as the United States Supreme Court recently

---

[47] RCW 42.56.565(1)(c).

[48] *Lorang*, 140 Wn.2d at 26; *State v. Halstien*, 122 Wn.2d 109, 122, 857 P.2d 270 (1993).

[49] *City of Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333 (1990), *cert. denied*, 500 U.S. 908 (1991); *see also Virginia v. Hicks*, 539 U.S. 113, 122, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003).

[50] *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989).

pointed out, "the PRA is not a prohibition on speech, but instead a *disclosure* requirement. '[D]isclosure requirements may burden the ability to speak, but they . . . do not prevent anyone from speaking.' "[51] We agree.

¶53 RCW 42.56.565 does not limit Parmelee's right to publish material critical of state agencies. Nor does it prohibit Parmelee from speaking in any other manner he chooses. The statute merely creates a procedure to enjoin the disclosure of nonexempt public records under limited circumstances. This does not offend the First Amendment. While the United States Supreme Court has determined that certain types of public information, primarily involving judicial proceedings, are covered by the First Amendment's right of access, it has not extended this right to all government documents.[52] As that Court explained in *Houchins v. KQED, Inc.*,[53] while parties have a right to obtain information " 'from any source by means within the law,' . . . that affords no basis for the claim that the First Amendment compels others—private persons or governments—to supply information."[54]

¶54 In sum, Parmelee fails in his burden to prove beyond a reasonable doubt that the statute is either vague or overly broad.

## Equal Protection

¶55 Parmelee argues that RCW 42.56.565 violates equal protection because it permits government agencies to "ar-

---

[51] *John Doe No. 1 v. Reed*, ___ U.S. ___, 130 S. Ct. 2811, 2818, 177 L. Ed. 2d 493 (2010) (emphasis added) (alterations in original) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. ___, 130 S. Ct. 876, 914, 175 L. Ed. 2d 753 (2010)).

[52] *See, e.g., Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 12-13, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986); *Houchins v. KQED, Inc.*, 438 U.S. 1, 9, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978) ("[T]his Court has never intimated a First Amendment guarantee of a right of access to all sources of information within government control.").

[53] 438 U.S. 1, 9, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978).

[54] *Id.* at 11 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681-82, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972)).

bitrarily select an unpopular records requestor and deny him or her public records." We disagree.

¶56 Equal protection under the law is guaranteed by both the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution.[55] "The appropriate level of scrutiny in equal protection claims depends upon the nature of the classification or rights involved."[56] The challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender.[57] Because we do not recognize prisoners as "a suspect class" and Parmelee does not argue that the classification violates a fundamental right, rational basis review applies.

¶57 " 'A classification passes rational basis review so long as it bears a rational relation to some legitimate end.' "[58] Under this deferential standard, legislation is presumed to be rational and the plaintiff bears the heavy burden of negating every conceivable basis which might support the legislation.[59] A legislative distinction survives rational basis analysis if " 'first, all members of the class are treated alike; second, there is a rational basis for treating differently those within and without the class; and third, the classification is rationally related to the purpose of the legislation.' "[60]

¶58 Essentially, Parmelee claims that the authority provided in RCW 42.56.565 to enjoin prisoners from receiving

---

[55] *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010).

[56] *Id.* (citing *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008)).

[57] *Id.* at 550.

[58] *Id.* at 551 (internal quotation marks omitted) (quoting *Am. Legion*, 164 Wn.2d at 609).

[59] *Id.*; *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S. Ct. 1001, 35 L. Ed. 2d 351 (1973).

[60] *Hirschfelder*, 170 Wn.2d at 551 (internal quotation marks omitted) (quoting *Am. Legion*, 164 Wn.2d at 609).

records is not rationally related to any legitimate government interest. This conclusory assertion is insufficient to overcome the presumption of rationality that applies to the PRA. Moreover, there are several rational reasons for the legislative amendment. For example, the statute preserves state resources and prevents frivolous requests by prisoners.[61] Because the statute also treats all prisoners alike and is rationally related to the purpose of the legislation, it passes rational basis scrutiny.

¶59 We affirm the issuance of the second injunction and all other decisions of the trial court that we have considered on the merits.

¶60 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.

GROSSE and SPEARMAN, JJ., concur.

Reconsideration denied September 19, 2011.

---

[61] *See Giarratano v. Johnson*, 521 F.3d 298, 304-05 (4th Cir. 2008) (concluding Virginia's FOIA inmate exclusion did not offend equal protection because it furthered the state's interest in conserving resources and preventing frivolous requests); *Proctor*, 248 Mich. App. at 469-70 (holding Michigan's inmate FOIA exclusion is rationally related to the Legislature's interest in conserving resources and preventing frivolous FOIA requests).