FILED
COURT OF APPEALS
DIVISION II

2014 MAR -4 AM 9: 18

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBBINS, GELLER, RUDMAN & DOWD, LLP, | No. 44520-4-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON, and OFFICE OF THE ATTORNEY GENERAL, | PUBLISHED OPINION |
| Respondents, | |
| VINCENT T. GRESHAM, | |
| Appellant. | |

WORSWICK, J. — Vincent Gresham appeals an order permanently enjoining the

Washington Attorney General's Office (AGO) from releasing records Gresham requested under

the Public Records Act (PRA), chapter 42.56 RCW. Law firm Robbins Geller Rudman &

Dowd, LLP (Robbins Geller) sought the injunction to protect information it submitted to the

AGO seeking eligibility to provide future securities litigation and related services to the

Washington State Investment Board (WSIB). Gresham also appeals a summary judgment order

dismissing his PRA claim for penalties and costs against the AGO. Because Robbins Geller

failed to prove that any exemption protected the information from production, we vacate the

challenged portions of the permanent injunction and order the AGO to produce the withheld

records. Because the AGO withheld the records in accordance with a court order, Gresham did

not prevail against the AGO, and thus summary judgment dismissal of his claims for penalties, attorney fees, and costs was proper.

FACTS

Wishing to build a roster of private law firms able to represent the WSIB in potential future securities litigation and provide related services such as portfolio monitoring, the AGO published a request for qualifications and quotations (RFQQ). The RFQQ warned firms that their responses were subject to disclosure under the PRA. The RFQQ informed firms that they could designate portions of their responses as "proprietary" information and that the AGO would notify firms if an agency received a public records request for any of the designated proprietary information and allow such firms an opportunity to obtain a court order enjoining disclosure. Robbins Geller and about two dozen other law firms responded to the 2010 RFQQ. Robbins Geller indicated that certain portions of its response (hereafter "2010 Washington Response") were proprietary. Robbins Geller was one of six firms selected to execute a "Master Securities Litigation Services Agreement" with the AGO and the WSIB.[1] Clerk's Papers (CP) at 1763.

On two prior occasions, government agencies had released information Robbins Geller's predecessor firm had provided in response to previous RFQQs. First, Robbins Geller's predecessor firm responded to a similar RFQQ in 2004 (hereafter "2004 Washington Response") that was subsequently disclosed in response to public records requests. Second, the firm's predecessor provided a response to an invitation to negotiate issued by the State Board of

---

[1] If future securities litigation services were to be needed, the AGO could, but need not, select a law firm from the roster. If the WSIB became actively involved in securities litigation, the AGO would then negotiate a separate engagement agreement for that representation.

No. 44520-4-II

Administration of Florida in 2009 (Florida Submittal) that was published in a national legal trade publication available on the Internet.

Under the PRA, Gresham requested the AGO produce any information related to requests for proposals from securities law firms and for any responses from the firms. The AGO then notified Robbins Geller that it had received Gresham's request and would release Robbins Geller's 2010 Washington Response, including the designated proprietary information, unless Robbins Geller obtained an injunction.

Robbins Geller filed a lawsuit against the AGO to enjoin production of its (1) past and proposed fee agreements with WSIB, (2) amount of and carriers of professional liability insurance, (3) "Portfolio Monitoring Program"[2] client list, and (4) names and contact information of 16 institutional investor clients used as references for securities litigation work. Gresham was joined as a necessary party. The AGO did not oppose Robbins Geller's request for injunctive relief as to the designated proprietary information.[3] Gresham filed a cross claim against the AGO alleging violation of the PRA.

The trial court permanently enjoined the AGO from producing the information at issue (hereafter "the protected information") based on two PRA exemptions and the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW. The trial court's order provided:

---

[2] The Portfolio Monitoring Program is a complimentary service that Robbins Geller developed to alert institutional clients to misconduct related to their investments that may cause losses.

[3] However, the AGO denied that *past executed fee agreements* between Robbins Geller and the State were exempt from disclosure. Robbins Geller agreed and sought to protect only its fee and costs *proposal*. The past executed fee agreements are not relevant to this appeal.

The Protected Information qualifies as valuable formulae, designs and research data, the disclosure of which would result in private gain and public loss, and is exempt from disclosure under RCW 42.56.270(1).

The Protected Information qualifies as trade secrets under RCW 19.108.010(4), and are exempt from disclosure under RCW 42.56.270(11)(a)-(b) as proprietary data and trade secrets essential to Robbins Geller's method of conducting business and the services the Firm offers its clients.

CP at 1343. The AGO then successfully moved for summary judgment of Gresham's PRA claim against it. Gresham appealed directly to our Supreme Court which transferred the case to this court.[4]

## ANALYSIS

### I. PUBLIC RECORDS ACT

The PRA requires state and local agencies to produce all public records upon request unless a specific PRA exemption or other statutory exemption applies. RCW 42.56.070(1); *Gendler v. Batiste*, 174 Wn.2d 244, 251, 274 P.3d 346 (2012). Exemptions are narrowly construed to promote the strong public policy favoring disclosure. RCW 42.56.030; *Franklin County Sheriff's Office v. Parmelee*, 175 Wn.2d 476, 479, 285 P.3d 67 (2012), *cert. denied*, 133 S. Ct. 2037 (2013). If an agency intends to produce records to a requester under the PRA, a person who is named in the record or to whom the record specifically pertains, may seek a judicial determination that the records are exempt from production. RCW 42.56.540; *King County Dep't of Adult & Juvenile Det. v. Parmelee*, 162 Wn. App. 337, 350, 254 P.3d 927 (2011), *review denied*, 175 Wn.2d 1006 (2012), *cert. denied*, 133 S. Ct. 1732 (2013). Under

---

[4] We accepted an amicus curiae brief on behalf of the McClatchy Company, Washington Newspapers Publishers Association, and Pioneer News Group.

RCW 42.56.540, a court may enjoin production of requested records if an exemption applies and examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions. *Parmelee*, 162 Wn. App. at 350-51. The party seeking to prevent production—in this case Robbins Geller—has the burden to prove that the requested documents fall within the scope of an exemption. *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn. App. 433, 441, 161 P.3d 428 (2007).

## II. STANDARD OF REVIEW

The PRA provides that "[j]udicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo." RCW 42.56.550(3). Where the record consists only of affidavits, memoranda of law, and other documentary evidence, an appellate court stands in the same position as the trial court in reviewing agency action challenged under the PRA.[5] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (lead opinion). Here, the trial court's decision granting a permanent injunction under the PRA was based solely on documentary evidence. Thus, we are not bound by the trial court's factual findings. *Dragonslayer, Inc.*, 139 Wn. App. at 441-42; *see Ames v. City of Fircrest*, 71 Wn. App. 284, 292-93, 857 P.2d 1083 (1993) (appellate review of PRA decisions based solely

---

[5] "This principle was drawn from the general rule that 'where the record both at trial and on appeal consists entirely of written and graphic material—documents, reports, maps, charts, official data and the like—and the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo.'" *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 253, 884 P.2d 592 (1994) (lead opinion) (quoting *Smith v. Skagit County*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969)).

on documentary evidence without testimony is de novo and the appellate court may decide both issues of fact and law); *cf. Zink v. City of Mesa*, 140 Wn. App. 328, 336-37, 166 P.3d 738 (2007) (where live testimony is presented in actions under the PRA, appellate courts review trial courts' factual findings to determine whether substantial evidence supported them). Also, we review injunctions issued under the PRA de novo. RCW 42.56.550(3); *Parmelee*, 162 Wn. App. at 351.

### III. STATUTORY INTERPRETATION PRINCIPLES

Our fundamental objective in interpreting a statute is to ascertain and carry out the legislature's intent or the collective intent of the voters acting in their legislative capacity (for statutes enacted through the initiative process). *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 585, 192 P.3d 306 (2008); *Dept't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn, LLC*, 146 Wn.2d at 9-11. When determining a statute's plain meaning, it is appropriate to look to the language of the statute itself and the context of the statute, including related statutes or other provisions within the same act. *Campbell & Gwinn, LLC*, 146 Wn.2d at 10-12. For example, in interpreting the PRA, we look at the act in its entirety to enforce the law's overall purpose. *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009).

## IV. APPLICATION OF STATUTORY EXEMPTIONS

A.    *"Other Statute" Exemption—Uniform Trade Secrets Act*

Gresham argues that the trial court erred by deciding that the protected information was a trade secret under the Uniform Trade Secrets Act [UTSA], and therefore concluding that it was exempt from disclosure under the "other statute" provision of RCW 42.56.070(1). We agree.

The PRA provides that a public record is exempt from disclosure if the record falls within any "other statute" which exempts or prohibits disclosure of specific information or records. RCW 42.56.070(1). The UTSA, which protects trade secrets, qualifies as an "other statute" under RCW 42.56.070(1). *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 262. The PRA may not be used to acquire knowledge of a trade secret. *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 262. A "trade secret" is

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4). "To be a trade secret, information must be 'novel' in the sense that the information must not be readily ascertainable from another source." *Spokane Research & Def. Fund v. City of Spokane*, 96 Wn. App. 568, 578, 983 P.2d 676 (1999). "A key factor in determining whether information has 'independent economic value' under the statute is the effort and expense that was expended in developing the information." *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 424, 204 P.3d 944 (2009). The alleged unique, innovative, or

7

novel information must be described with specificity and, therefore, "conclusory" declarations that fail to "provide concrete examples" are insufficient to support the existence of a trade secret. *McCallum*, 149 Wn. App. at 425-26. Compilations of customer information *may* be a trade secret. *See, e.g., Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436, 442, 449, 971 P.2d 936 (1999) (trial court finding that customer list was trade secret was not at issue on appeal—only issue was whether memorized information could be a trade secret).

In *Woo v. Fireman's Fund Ins. Co.*, 137 Wn. App. 480, 484, 154 P.3d 236, *rev'd in part on other grounds*, 161 Wn.2d 43, 164 P.3d 454 (2007), Division One of this court addressed whether the Fireman's Fund insurance claim manuals were trade secrets. To prove novelty and independent economic value, the Fireman's Fund submitted declarations claiming that the manuals "'took several thousand people hours to produce and have evolved over several years,'" disclosure would result in "'a serious loss of [their] property interest'" and that the manuals contained "'claims handling philosophies and strategies believed to be unique to Fireman's Fund.'" *Woo*, 137 Wn. App. at 488. Fireman's Fund also claimed that allowing competitors to gain access to the materials "'would result in economic value to the competitor and place it in a competitive advantage'" and that smaller insurance companies in particular would gain a competitive advantage by copying Fireman's Fund materials. *Woo*, 161 Wn.2d at 488. The court held that the declarations were too conclusory to prove that the manuals compiled the information in an innovative way because they failed to provide concrete examples to illustrate how the Fireman's Fund strategies or philosophies in claims handling were *materially different from those of other insurers*. *Woo*, 137 Wn. App. at 489. Also, it held that the Fireman's Fund declarations failed to prove that competitors would want the manuals or quantify in any

meaningful way the competitive advantage that the hypothetical plagiarizer would enjoy. *Woo*, 137 Wn. App. at 489. Accordingly, the court held that the claim manuals were not trade secrets. *Woo*, 137 Wn. App. at 492.

Similarly, in *McCallum* we considered whether an insurance company's claim manuals, training manuals, and claim bulletins qualified as trade secrets. 149 Wn. App. at 416, 424, 426. As in *Woo*, we held that the documents did not qualify for protection as trade secrets because the insurance company failed to provide concrete examples to illustrate how its strategies or procedures in handling claims were materially different from those of its competitors. *McCallum*, 149 Wn. App. at 426-27. Instead, the evidence consisted of conclusory statements that it devoted considerable time, manpower, and finances in developing the documents and that its competitors would gain an unfair advantage if they could reproduce its materials. *McCallum*, 149 Wn. App. at 426-27.

1. *Fee Proposal & Insurance Information*

In support of exempting its fee proposal and insurance information from the PRA, Robbins Geller asserts that its approach to evaluating and setting potential fees is unique, the firm's fee proposals are specific to each client and case, and the proposals require substantial time and effort to formulate. Robbins Geller also argues that release of the protected information could give its competitors an unfair competitive advantage by allowing them to mimick its fee proposal and insurance coverage to make themselves more attractive to clients and to use the information to outbid Robbins Geller for future work. Gresham and the amici argue that a pricing schedule is not a protectable idea under trade secrets law. The record before us includes evidence that securities law firms often use a sliding scale of fees based on the recovery amount

and the stage of the litigation's resolution and that many firms have significant malpractice insurance coverage. Moreover, although the fee grid in the 2010 Washington Response contains more detail and is of a larger scale, Robbins Geller's predecessor firm included sample fee grids in its 2004 Washington Response, which were disclosed to Gresham. And Robbins Geller's 2004 Washington Response stated that the firm carried a high amount of professional liability insurance coverage—between $50 and $100 million. Robbins Geller has not shown that its general insurance information and fee proposal in its 2010 Washington Response differs significantly from other such proposals already in the public arena. As in *McCallum* and *Woo*, we reject Robbins Geller's conclusory assertions of uniqueness and competitor unfair advantage as to its fee and insurance information and conclude that this information has not been shown to constitute trade secrets.

2. *Portfolio Monitoring Program Client List*

A Portfolio Monitoring Program client list was included in the 2004 and 2010 Washington Responses and the Florida Submittal. The client list included in the Florida Submittal was disclosed and later published on *The American Lawyer* website. And the client list in the 2004 Washington Response was partially disclosed in response to a 2005 public records request—Robbins Geller's predecessor sought injunctive relief from the disclosure request. Robbins Geller's predecessor argued and trial court concluded that 118 client names not previously published were exempt from disclosure.

Here, Gresham did not oppose Robbins Geller's request to enjoin the disclosure of client names not previously published. Stated another way, client names not previously published are protected from disclosure by the permanent injunction and their status is not before us.

But Robbins Geller has not shown that it took reasonable efforts to maintain secrecy of the portion of the list previously published. The previously published names were disclosed in the Florida Submittal and the 2004 Washington Response. Robbins Geller responds that it was unaware of the publication of the Florida Submittal. But the record contains no evidence of efforts to have the list removed from *The American Lawyer* website. Moreover, Robbins Geller does not point to evidence of its efforts to keep the list secret in other contexts—it responds only to Gresham's mention of the Florida and Washington Responses. *See Calisi v. Unified Fin. Servs., LLC*, 302 P.3d 628, 632 (Ariz. Ct. App. 2013) ("[c]ourts have considered the extent to which the claimant divulged its customer list externally and internally, i.e., to people outside of its business as well as to its own employees"). Based on Robbins Geller's failure to demonstrate that it has made reasonable attempts to keep the names of its previously published Portfolio Monitoring Program clients secret, we conclude that the previously published list of client names does not qualify for protection as a trade secret.

### 3. *Client Reference List*

Robbins Geller did not demonstrate that the firm's list of client references from past litigation is a trade secret. By its very nature, a list of references is created for dissemination outside the firm. It is not clear how a reference list derives independent economic value from not being generally known to others. Moreover, a portion of the reference list at issue here includes references and contact information previously disclosed, which is evidence that Robbins Geller uses the list for its traditional purpose (disclosure to third parties) and does not treat its reference list as secret. Accordingly, Robbins Geller has not demonstrated that its list of references qualifies for protection as a trade secret.

11

4. *Injunction Standard*

No court has addressed whether the PRA injunction standard, RCW 42.56.540,[6] applies when a court relies on an "other statute" exemption, such as the UTSA, rather than a PRA exemption to bar disclosure.[7] Gresham and the amici contend that a party seeking to enjoin disclosure of records requested under the PRA must meet the requirements of RCW 42.56.540 regardless of whether a claimed exemption is pursuant to the "other statute" provision, such as the UTSA. Conversely, the AGO and Robbins Geller contend that "other statutes" incorporated into the PRA provide independent bases for enjoining disclosure and, thus, courts should look exclusively to the dictates of the "other statutes." Because Robbins Geller's information does not qualify for exemption under the UTSA, we need not decide whether the PRA injunction

---

[6] Under RCW 42.56.540, a trial court may issue an injunction only if it finds that disclosure "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions."

[7] The parties did not direct this court to any cases where the court addresses whether a party asserting an "other statute" exemption is required to prove the RCW 42.56.540 injunction requirements. The AGO asserts that our Supreme Court already rejected application of RCW 42.56.540 to "other statute" exemptions in *Ameriquest Mortg. Co. v. Office of Attorney Gen.*, 170 Wn.2d 418, 440, 241 P.3d 1245 (2010). If the Supreme Court decided the issue, it did so sub silentio. *See Ameriquest*, 170 Wn.2d at 440 (holding, without discussing RCW 42.56.540, that the "other statute" provision supplements the PRA's exemptions by allowing a separate statute to prohibit redactions or disclosures that the PRA would otherwise not allow). And on appeal from remand of *Ameriquest*, our Supreme Court held, without discussing the RCW 42.56.540 injunction standard, that records containing information protected by the "other statute" were exempt from disclosure. *Ameriquest Mortg. Co. v. Office of Attorney Gen.*, 177 Wn.2d 467, 499, 300 P.3d 799 (2013) (the court discussed the RCW 42.56.540 injunction standard only in regard to the PRA exemptions); *see also Wright v. Dep't of Soc. & Health Servs.*, 176 Wn. App. 585, 596-97, 309 P.3d 662 (2013), *review denied*, No. 89396-9 (Wash. Feb. 6, 2014) (holding that juvenile records at issue were exempt from disclosure under an "other statute," chapter 13.50 RCW, which provides the exclusive means of obtaining juvenile justice and care records, without discussing the PRA injunction standard).

standard, RCW 42.56.540, must also be met. Although the parties and the amici urge us to provide guidance on this issue, we decline to do so in dicta.

B.    *PRA Exemptions*

To enjoin production of records under the PRA, "'[t]he court must find that a specific exemption applies *and* that disclosure would not be in the public interest and would substantially and irreparably damage a person'" or vital government function. *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 420, 259 P.3d 190 (2011) (lead opinion) (emphasis added) (alteration in original) (quoting *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 808, 246 P.3d 768 (2011)); RCW 42.56.540. We first consider whether the specific PRA exemptions asserted by Robbins Geller apply. If no exemption applies, we do not need to reach the other part of the test (referred to as the "injunction standard").

1. *RCW 42.56.270(1)*[8]

Gresham argues the trial court erred when it ruled that the protected information was exempt from production under RCW 42.56.270(1). RCW 42.56.270 provides in part:

> The following financial, commercial, and proprietary information is exempt from disclosure under this chapter:
>
> (1) Valuable formulae, designs, drawings, computer source code or object code, and research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss;

We agree.

---

[8] Formerly RCW 42.17.310(1)(h). LAWS OF 2005, ch. 274, § 402, 407.

a. *Private Party May Assert RCW 42.56.270(1) Exemption*

As a threshold matter, Gresham argues that a private party, here Robbins Geller, may not invoke the RCW 42.56.270(1) exemption to block disclosure when the public agency holding the records is willing to disclose the records.[9] We disagree.

Whether a private party may invoke the *RCW 42.56.270(1)* exemption is an issue of first impression, and thus Gresham cites no authority for the proposition that it is only available where a public agency opposes the disclosure.[10] We begin by determining whether the statute's text and context reflect a plain meaning. *Campbell & Gwinn, LLC*, 146 Wn.2d at 10-12. Gresham points to the exemption's requirement that disclosure must cause a *public*, rather than *private* loss. *See* RCW 42.56.270(1). Although the statute's language expressly requires that disclosure would cause *public* loss, it does not prohibit its assertion by private parties.

We also consider the purpose of RCW 42.56.270(1), which is to prevent unfair private gain derived from the exploitation of potentially valuable intellectual property placed in the public domain for a public benefit. *Evergreen Freedom Found. v. Locke*, 127 Wn. App. 243,

---

[9] Gresham acknowledges that private parties may assert other PRA exemptions regardless of state agency position. *See* RCW 42.56.540 (providing that any party to whom the requested records specifically pertain may seek an injunction).

[10] Gresham correctly points out, however, that in all cases applying the RCW 42.56.270(1) exemption, the agency opposed disclosure. *See, e.g.*, *Servais v. Port of Bellingham*, 127 Wn.2d 820, 823-24, 829-33, 904 P.2d 1124 (1995) (Port of Bellingham opposed disclosure of cash flow analysis study); *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 250, 254-55 (university opposed disclosure of an unfunded grant proposal); *Evergreen Freedom Found. v. Locke*, 127 Wn. App. 243, 245, 249, 110 P.3d 858 (2005) (the agency and Boeing opposed disclosure of portions of their agreement to develop an airplane assembly facility in Everett); *Spokane Research & Def. Fund*, 96 Wn. App. at 571-72, 574 (the city and developers opposed disclosure of several records including a lease and credit and financial studies).

245, 249,110 P.3d 858 (2005); *Spokane Research & Def. Fund*, 96 Wn. App. at 576. Gresham argues that because the purpose of the exemption is to protect the State's ownership rights in intellectual property, the exemption only applies if the agency opposes disclosure. But Gresham does not explain why a private party's assertion of the exemption—so as long as the private party can demonstrate that disclosure would cause sufficient public loss—would not further the purpose of protecting the State's ownership rights in intellectual property.

Because there is nothing in the text of the exemption that could be interpreted to restrict its application to public agencies and because the unrestricted application is not inconsistent with the purpose of the statute, we hold that under RCW 42.56.270(1)'s plain meaning, the exemption may be invoked by a private party. *See Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (holding that when a statute is not ambiguous, only a plain meaning analysis of a statute is appropriate).

b. *Private Party May Assert Public Loss Regardless of Agency Position*

Similarly, Gresham asserts that a private party, here Robbins Geller, should not be able to assert the public loss component of RCW 42.56.270(1) when the state agency chooses not to do so.[11] Gresham points to two federal cases for support. In *Orion Research Inc. v. Envtl. Prot. Agency*, 615 F.2d 551, 554 (1st Cir. 1980), the court recognized that the agency was a credible

---

[11] The AGO did not take an official position on whether the protection information qualified for an exemption. However, the AGO's response to Gresham's request to admit provides:

> The AGO believes, among other things, that disclosure could, as the law firms have asserted, inhibit firms' desire to compete for the State's legal work. This is because the firms may be reluctant to provide proprietary information as part of the procurement process if they believe that information will be made available to their competitors. If that is indeed the case, there would be a public loss attributable to the inability to procure the best outside legal services.

CP at 922-23.

15

source on whether disclosure would cause public loss even in the absence of extrinsic evidence. This case does not help Gresham, because here, the AGO acknowledged in its discovery response that disclosure could cause public loss.

Gresham also cites *Hercules, Inc. v. Marsh*, 839 F.2d 1027, 1028 (4th Cir. 1988), where a government contractor sought to prevent the Army from releasing a telephone directory that the contractor prepared at the government's expense. The contractor argued that disclosure would impair the government's ability to obtain necessary information in the future and cause substantial harm to the contractor's competitive position. *Hercules*, 839 F.2d at 1029. The court rejected both arguments, stating that the contractor's assertion of competitive injury was conclusory or speculative and that if the Army was so concerned about disclosure harming its access to information in the future, it could have employed that rationale to preclude disclosure. *Hercules*, 839 F.2d at 1029-30. The court stated that because the Army failed to do so, the contractor would not be permitted to raise the issue on the Army's behalf. *Hercules*, 839 F.2d at 1030.

*Hercules* could be interpreted either as barring private parties from asserting government harm on the government's behalf or merely as a failure of proof to assert government harm. Either way, Gresham is correct that there is federal support for the proposition that a third party has no "standing" to assert federal Freedom of Information Act (FOIA)[12] exemptions that appear to protect government interest. *See, e.g., United Techs. Corp., Pratt & Whitney Aircraft Grp. v. Marshall*, 464 F. Supp. 845, 852-53 (D. Conn. 1979).

---

[12] 5 U.S.C. § 552

The federal case law Gresham cites is not persuasive because our PRA differs from FOIA in important respects. Congress did not create a private cause of action under FOIA. *Hercules*, 839 F.2d at 1029. Because of this, judicial review of agency action alleged to be in violation of FOIA is governed by 5 U.S.C. § 706, which allows courts to interfere with an agency's decision only if the agency's decision is arbitrary or capricious. *Hercules*, 839 F.2d at 1029. On the other hand, the voters of Washington State created a privately enforceable cause of action under the PRA and expressly directed courts to review de novo agency action taken or challenged under the PRA. RCW 42.56.540, .550. These substantial differences evidence a conscious choice of the voters of our state to constrain agency discretion and empower private parties to enforce the provisions of the PRA, including the exemptions therein. Because the PRA includes an express provision giving interested parties the right to seek judicial determination that records are exempt and an injunction preventing their disclosure, Robbins Geller is not barred from asserting the exemption or its public loss component. *See* RCW 42.56.540.

c. *Robbins Geller Does Not Prove Public Loss*

The parties dispute whether disclosure would cause public loss. Robbins Geller's assertion of public loss is based on an assistant attorney general's deposition testimony in which he testified that "'some of these law firms have pointed out that they may be less likely to participate or—in the State's procurement process and may be—if we are unable to protect—or—if they are unable to protect the information that they deem proprietary and important . . . it could clearly reduce the State's ability to procure the best legal services'" and the AGO's similar

17

admission that disclosure could inhibit firms' desire to compete for the State's legal work.[13] Br. of Resp't (Robbins Geller) at 15 (emphasis omitted) (quoting CP at 1181). Gresham argues that Robbins Geller's evidence does not demonstrate the requisite public loss because it is speculative and contradicted by prior experience. Gresham points out that (1) the AGO successfully conducted the 2010 RFQQ process despite disclosing Robbins Geller's predecessor's and other firms' 2004 RFQQ responses to numerous requesters; (2) Robbins Geller and approximately two dozen other firms responded to the 2010 RFQQ, despite the AGO's warning that it would disclose the responses to PRA requesters unless the firms obtained an injunction preventing disclosure; and (3) although Gresham sought all of the 2010 RFQQ responses, only two firms sought an injunction to prevent the AGO from disclosing their responses. Gresham also argues that the disclosure of RFQQ responses is unlikely to deter firms from future participation because of the possibility of being selected for a lucrative litigation contract from the State. *See, e.g., Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F. Supp. 4, 6 (D. D.C. 1981) (recognizing that disclosure of prices charged the government is the cost of doing business with the government and that disclosure is unlikely to deter competition for government contracts). Here, the AGO's willingness to disclose, notwithstanding their supposition that it *could* inhibit participation in future RFQQs, along with other law firms' decisions not to seek an injunction to

---

[13] Gresham asserts that the trial court erred in giving weight to a state employee's opinion and urges that the employee's opinion should have been disregarded because it was not shared by the agency. But the employee at issue had experience with such matters, and his concern seems reasonable. There is no apparent reason the court should have disregarded it. There is no apparent reason why the statement of the assistant attorney general or similar statement of the AGO cannot be used as evidence by Robbins Geller to assert a public loss notwithstanding that the AGO itself does not take an official position on whether or not the exemption applies.

protect their submissions tends to show that disclosure of RFQQ responses is not a meaningful deterrent to future participation in RFQQs. As the party asserting the exemption, Robbins Geller had the burden to prove that disclosure would cause public loss. Because its assertion of public loss is merely conjecture and it does not respond to Gresham's specific contradictions, we hold that Robbins Geller failed to prove the requisite public loss.

    2. *RCW 42.56.270(11)*

Gresham next argues that the trial court erred in ruling that the records at issue were exempt under RCW 42.56.270(11). RCW 42.56.270 provides in part:

> The following financial, commercial, and proprietary information is exempt from disclosure under this chapter:
>
>    . . . .
>
>    (11) Proprietary data, trade secrets, or other information that relates to: (a) A vendor's unique methods of conducting business; (b) data unique to the product or services of the vendor; or (c) determining prices or rates to be charged for services, submitted by any vendor to the department of social and health services for . . . state purchased heath care.

The trial court concluded that the records here were exempt under subsections (a) and (b) as "proprietary data and trade secrets essential to Robbins Geller's method of conducting business and the services the Firm offers its clients." CP at 1343.

    a. *Subsection (a): Unique Methods of Conducting Business*

Gresham argues that the protected information does not disclose Robbins Geller's business methods.

Robbins Geller argues that the way that it determines its pricing and insurance is part of its method of doing business. But Robbins Geller has not demonstrated that the protected information contains its "methods" rather than the end result. Certainly a list of client names and

references does not reveal Robbins Geller's methods for doing business. And even if the fee and insurance information could be considered methods of conducting business, Robbins Geller has not shown that its methods are unique. For example, the record reflects that many of Robbins Geller's competitors use a sliding scale of fees depending on the recovery amount and the stage of the litigation. Although the amount of insurance and amount of fees will vary by law firm, the method of conducting business is not unique.

b. *Subsection (b): Data Unique to the Product or Services*

The trial court also held that the protected information was exempted under RCW 42.56.270(11)(b), which protects "data unique to the product or services of the vendor." CP at 1343. Robbins Geller did not provide evidence proving that the fee proposal, insurance list, client or reference list fit the description of data unique to a product or service. The protected information could be considered data, but it is not data unique to Robbins Geller's services. In order to be unique to Robbins Geller's services, the data must reveal some unique aspect about the services. The names of Robbins Geller's clients, references, and insurance carriers reveals little about its legal and portfolio monitoring services, let alone something unique. Similarly, the inexact amount of Robbins Geller's professional liability insurance coverage and its pricing approach of its legal services is not information unique to its services. As we discussed above, other competing law firms carry liability insurance and use a similar approach to fee setting. We

hold that Robbins Geller did not prove that the protected information was data unique to its product or services qualifying for exemption under RCW 42.56.270(11)(b).[14]

### 3. RCW 42.56.270(6)

Robbins Geller also argues that disclosure may be enjoined under RCW 42.56.270(6), which exempts "[f]inancial and commercial information supplied to the state investment board by any person when the information relates to the investment of public trust or retirement funds and when disclosure would result in loss to such funds or in private loss to the providers of this information." The trial court did not rely on RCW 42.56.270(6) for issuance of the injunction.

RCW 42.56.270(6) is inapplicable because the protected information was not "supplied to the state investment board." It was provided to the AGO, which has exclusive authority to retain attorneys for state agencies, including the WSIB. RCW 43.10.067. Robbins Geller has not pointed to evidence that the documents were supplied to or used by the WSIB. Accordingly, we agree with the trial court's determination that RCW 42.56.270(6) does not apply here.

---

[14] Gresham also argues that the phrase "submitted by any vendor to the department of social and health services for . . . state purchased health care," which follows the comma in subsection (c), applies to subsections (a) and (b). RCW 42.56.270(11). We disagree. Here, the subparts of RCW 42.56.270(11) are set off by semicolons indicating that they are independent clauses. *See Elgin Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 718 F.3d 488, 494-95 (5th Cir. 2013). Therefore, the provision at the end of the subsection (c) stating that the information must be "submitted by any vendor to the department of social and health services" applies only to that subsection and not subsections (a) and (b). Moreover, the subsections are disjunctive, which also supports that the clauses are separate. If the legislature had intended to limit the exemption to information submitted to the department of social and health services, it could have included that language in each of the subsections or placed the language at the beginning of the sentence preceding the three subsections.

V. SUMMARY JUDGMENT DISMISSAL OF GRESHAM'S CROSS CLAIM AGAINST THE AGO

Gresham argues that the trial court erred in granting summary judgment on his cross claim against the AGO because the claim became moot when the trial court ruled that he was not entitled to the public records. The AGO argues that the cross claim was not moot and that summary judgment was proper. We agree with the AGO.

We review a trial court's order granting summary judgment de novo. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz*, 175 Wn.2d at 271. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

The PRA requires the trial court to award attorney fees and costs to a party who "prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time." RCW 42.56.550(4). A PRA claimant "prevails" against an agency only if the agency wrongfully withheld the documents. *Germeau v. Mason County*, 166 Wn. App. 789, 811, 271 P.3d 932, *review denied*, 174 Wn.2d 1010 (2012). RCW 42.56.550(4) does not authorize an award of costs, attorney fees, or penalties in an action brought by a private party to prevent disclosure of public records held by an agency where the agency has agreed to release the records but is prevented from doing so by court order. *Bainbridge Island Police Guild*, 172 Wn.2d at 421 n.14. This interpretation is consistent with the purpose of the attorney fees

provision, which is to encourage broad disclosure and to deter agencies from improperly denying access to public records. *Lindberg v. Kitsap County*, 133 Wn.2d 729, 746, 948 P.2d 805 (1997).

Gresham argues that his cross claim became moot after the trial court enjoined the AGO from disclosing the records. Gresham cites *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 514 P.2d 137 (1973), for support. In *Diversified*, our Supreme Court dismissed a lessor's action seeking a declaratory judgment that its lessee would be liable for projected claims of a lessee's social guest who had been injured on the premises. 82 Wn.2d at 812-13. Because the injured party's claim was an unpredictable contingency, the declaratory action was not ripe. *Diversified*, 82 Wn.2d at 815. There is no apparent similarity between Gresham's cross claim here and the unripe declaratory suit in *Diversified*, and Gresham does not explain why his cross claim is moot or otherwise not justiciable. The trial court's order granting the injunction did not address whether the AGO could be held liable for the failure to produce the protected information, nor did it dispose of Gresham's cross claim against the AGO. The injunction did not render the cross claim moot, the cross claim was merely unsuccessful. Because Gresham's cross claim was not moot, we affirm summary judgment dismissal in favor of the AGO.

## ATTORNEY FEES

Finally, Gresham argues that he should be awarded costs, attorney fees, and penalties if he becomes the prevailing party in this action. Specifically, Gresham argues that the AGO should be liable for penalties based on a theory of respondeat superior for its employees interference with Gresham's attempt to obtain public records that the AGO was willing to produce. Gresham supports his argument with two tort cases involving employers' responsibility

for their employees' actions, but neither relates to whether the AGO's (or its employees') action gives rise to liability under the PRA.

The PRA requires the trial court to award attorney fees and costs to a party who prevails against an agency, which occurs when an agency wrongfully withholds documents. *Gronquist v. Dep't of Licensing*, 175 Wn. App. 729, 756, 309 P.3d 538 (2013). Here, the AGO was willing to produce the protected information, but was prevented from doing so by a court order. As previously discussed, even if Gresham succeeds in overturning the injunction, Gresham will not have prevailed over the AGO for purposes of awarding costs, attorney fees, and penalties under RCW 42.56.550(4). *Bainbridge Island Police Guild*, 172 Wn.2d at 421 n.14. Accordingly, we deny his request for attorney fees, costs, and penalties against the AGO even though we vacate most of the trial court's permanent injunction order.

We vacate the trial court's permanent injunction, except for the unchallenged portion that protects not previously published names of Portfolio Monitoring Program clients, and order the AGO to produce the records at issue. We also affirm summary judgment dismissal of Gresham's cross claim against the AGO.

_____
Worswick, C.J.

We concur:

_____
Penoyar, J.P.T.

_____
Verellen, J.

24