# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOHN DOE 1-15, | No.  52845-2-II |
| Appellants, | |
| v. | |
| COWLITZ COUNTY SHERIFF'S OFFICE, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J.  — John Doe 1-15 sued to enjoin the release of their level one sex offender

records under the Public Records Act (PRA).  Chapter 42.56 RCW.  The John Does argued that

the requested records were exempt from disclosure as being specific intelligence information or

specific investigative information, the release of which would violate their privacy rights, and

that the records were not in the public interest and the record release would irreparably damage

them.  The trial court determined that no exemption applied and ordered that the records be

released, but stayed its order and certified interlocutory appeal.  We hold that no PRA exemption

applies.  Consequently, we affirm.

## FACTS

John Doe 1-15 are level one sex offenders.[1]  Curtis Hart submitted a public records

request to the Cowlitz County Sheriff's Office (CCSO) seeking level one sex offender records

---

[1] Level one sex offenders are those classified as the least likely to reoffend.  *Doe ex rel. Roe v. Washington State Patrol*, 185 Wn.2d 363, 368, 374 P.3d 63, 65 (2016).  RCW 4.24.550(6)(b).

under the PRA.[2] Hart asked for names, dates of birth, addresses, photographs, dates, and descriptions of offense summary records of all level one sex offenders. Determining that no exemption applied to the release of the requested records, the CCSO notified the John Does that their records had been requested and that it intended to fulfill the request absent a court order.

The John Does filed a complaint in superior court seeking declaratory and injunctive relief, and a motion for an ex parte restraining order to enjoin the CCSO from releasing the requested records to Hart. The trial court restrained the CCSO from releasing the requested records to Hart until it held a substantive hearing on the matter.

At that hearing, the John Does argued that the requested records were exempt under the investigative records exemption, RCW 42.56.240,[3] and RCW 42.56.050.[4] The John Does also argued that release of the requested records would not clearly be in the public interest and their release would substantially and irreparably damage them, and that the court should enjoin their release under RCW 42.56.540.[5] The John Does further argued that the court should consider

---

[2] The record does not contain Hart's actual PRA request or the date the request was submitted.

[3] RCW 42.56.240 prohibits the release of "specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy."

[4] RCW 42.56.050 states that an invasion or a violation of a right to privacy as referred to in chapter 42.56 RCW only occurs when disclosure of information about a person "(1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public."

[5] The trial court can enjoin the release of requested information under the PRA when the public disclosure of that information "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." RCW 42.56.540.

Hart's motivations for obtaining the requested records when determining whether the requested records are exempt from disclosure under the PRA.

The John Does included affidavits and exhibits claiming that Hart had a history of engaging in harassment and was a member of the self-styled "Punisher Squad," which described itself on social media as "a group of concerned citizens (Radical Child Advocates) that bring sexual predators to light." Clerk's Papers (CP) at 8. They boast that they "publicly shame [sex offenders] for sport." CP at 8. Hart had previously been restrained under a lifetime no contact order due to his harassing behavior against a person whom he believed was a child sexual predator.

The CCSO responded that, as a law enforcement agency, they were in the best position to determine whether the records were covered by the investigative records exemption, and that this exemption did not apply because the records were not investigatory in nature from their perspective. The CCSO stated that because the nondisclosure of information sought by the John Does was not "essential to effective law enforcement," it did not meet the exemption for specific intelligence information. Verbatim Report of Proceedings at 26.

The court found that (1) Hart was "likely to misuse the information in childish, immature, and offensive ways that would likely be harmful" to the John Does, (2) Hart was likely to repeat the conduct that gave rise to his lifetime order of no contact for harassment if the requested records were released, and (3) the John Does had credible and understandable fear of Hart. CP at 73. Notwithstanding those findings, the court concluded that no exemption applied to the requested records, and "absent some additional legal authority[,] [the court had] insufficient guidance as how to consider the motivation of the requester" to enjoin the release of the

requested records under RCW 42.56.540. CP at 74. The trial court denied injunctive relief, certified its order for interlocutory appeal under RAP 2.4, and stayed its order pending resolution of the appeal.[6]

The John Does appeal the trial court's order denying their injunctive relief.

ANALYSIS

The John Does argue that the trial court erred by not enjoining release of the requested records. They argue that the specific investigative or intelligence information records exemption, RCW 42.56.240, applies to their case because level one sex offender information is intelligence information and nondisclosure is necessary to protect their right to privacy. The John Does also argue that the trial court erred by not considering Hart's motivations for his PRA request in determining whether the exemption applied. The John Does argue that the release of the requested information violates their right to privacy because it would cause substantial and irreparable damage and would not clearly be in the public interest. The John Does also argue that, in addition to injunctive relief under the PRA, they are entitled to injunctive relief under CR 65.[7]

The CCSO argues that level one sex offender records are not investigative records under the PRA because they are not investigative in nature and do not violate the John Does' rights to privacy. The CCSO argues that it was forbidden from considering Hart's motivations when it determined whether to release the requested information, but that it takes no position on the

---

[6] The trial court's order also noted that the CCSO had received similar PRA requests for these records. The order directed the CCSO to "file into this cause number any requests it receives pursuant to RCW 42.56 for level one sex offenders' records." CP at 74.

[7] CR 65 provides that a trial court can grant a temporary restraining order.

court's prerogative to inquire upon Hart's motivations when determining whether to enjoin the records under the PRA.

We agree with the CCSO and hold that the trial court did not err when it denied the John Does' motion for injunctive relief because no exemption to the PRA applies. Accordingly, we affirm.

I. LEGAL PRINCIPLES

The PRA "is a strongly-worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). Unless a specific PRA exemption exists or other statutory exemption applies, the PRA requires agencies to produce all public records upon request. RCW 42.56.070(1); *Gendler v. Batiste*, 174 Wn.2d 244, 251, 274 P.3d 346 (2012). The PRA's disclosure provisions must be liberally construed and its exemptions narrowly construed. RCW 42.56.030. "The language of the PRA must be interpreted in a manner that furthers the PRA's goal of ensuring that the public remains informed so that it may maintain control over its government." *Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus.*, 185 Wn.2d 270, 277, 372 P.3d 97 (2016).

The PRA contains exemptions to disclosure. The exemption at issue here under RCW 42.56.240(1) is "specific intelligence information and specific investigative records" compiled by law enforcement and penology agencies, "the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy." The party seeking to enjoin or withhold the release of records under the PRA bears the burden of proof that the requested information falls within the scope of an exemption. *Robbins, Geller, Rudman & Dowd, LLP v. State*, 179 Wn. App. 711, 719, 328 P.3d 905 (2014).

We review de novo whether requested records are exempt from disclosure under the PRA. *Washington Pub. Employees Ass'n v. Washington State Ctr. for Childhood Deafness & Hearing Loss*, 194 Wn.2d 484, 493, 450 P.3d 601 (2019); RCW 42.56.550(3). However, we review the trial court's ultimate decision whether to grant injunctive relief for an abuse of discretion. *Washington Pub. Employees Ass'n*, 194 Wn.2d at 493.

A.     *Standard for Injunctive Relief for PRA Request*

As an initial matter, the John Does cite CR 65 as a standard for granting relief in a PRA request case. We hold that CR 65 does not apply here and instead review the case under the PRA standards.

CR 65 allows a trial court to grant an injunction when (1) the plaintiff has a clear legal or equitable right, (2) the plaintiff has a well-grounded fear of immediate invasion of that right, and (3) the acts complained of are either resulting in or will result in actual and substantial injury to the party. *Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 784, 418 P.3d 102 (2018).

The PRA has a different standard, which includes consideration of both public and private interests. Under RCW 42.56.540, a trial court can grant injunctive relief when it finds that examination of records "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." The PRA standard governs whether exempt records under the PRA can be withheld from disclosure, not CR 65. *See Lyft*, 190 Wn.2d at 785. Consequently, the PRA injunction standard applies to this case.

Whether to grant injunctive relief under the PRA is a two-step inquiry. *King Cnty. Dep't. of Adult and Juv. Det. v. Parmelee*, 162 Wn. App. 337, 350-51, 254 P.3d 927 (2011). "First, the

6

court must determine whether the records are exempt under the PRA or an 'other statute' that provides an exemption in the individual case. Second, it must determine whether the PRA injunction standard is met." *Lyft*, 190 Wn.2d at 790. When analyzing the first step—whether an exemption applies—trial courts are generally constrained from consideration of a requestor's motive or intent. *DeLong v. Parmelee*, 157 Wn. App. 119, 151-52, 236 P.3d 936 (2010) (holding that prison inmates, including those blatantly abusing the PRA, have standing to request records under the PRA, but that the trial court did not err in granting injunctive relief), *review granted*, 171 Wn.2d 1004, *on remand*, 164 Wn. App. 781 (2011).[8]

That an exemption applies under the PRA does not ipso facto support issuing an injunction. *Lyft*, 190 Wn.2d at 786. If one of the PRA's exemptions apply, then a court can enjoin the release of the public record only if disclosure "would clearly not be in the public interest and would substantially and irreparably damage any person, or . . . vital governmental functions." *Lyft*, 190 Wn.2d at 791(quoting RCW 42.56.540).

B.      *Specific Investigative or Intelligence Exemption Does Not Apply*

The John Does argue that the specific investigative or intelligence information records exemption under RCW 42.56.240(1) applies to their level one sex offender records. Specifically, the John Does argue that these records constitute "specific intelligence information" within the meaning of the PRA. Br. of App. at 5.

---

[8] Upon remand, we dismissed DeLong's appeal because it was rendered moot by statutory amendments that specifically permitted injunctive relief for nonexempt public records where prison inmates intended to harass or intimidate the Department of Corrections or its employees. *DeLong* v. Parmelee, 164 Wn. App. at 788. However, the premise that courts do not generally consider the requester's motivation when determining whether public records are subject to disclosure under the PRA or if they are exempt remains unchanged.

On appeal, the John Does do not argue that these records constitute investigatory records as they did at the trial court. The CCSO does not address in its brief whether the requested records constitute "specific intelligence information" under the PRA, but they argue that they are not investigatory in nature because the John Does have been fully adjudicated for their crimes. Because the John Does argue only that the exemption applies because their level one sex offender records are "specific intelligence information," we address only this issue. We disagree with the John Does and hold that this exemption does not apply.

Under RCW 42.56.240(1), specific intelligence information records may be exempt from production. To be within the scope of this exemption, the record must be (1) specific information that is intelligence or investigative in nature; (2) compiled by an investigative, law enforcement, or penological agency; and (3) essential to law enforcement or the protection of privacy. RCW 42.56.240(1); *West v. City of Tacoma*, 12 Wn. App.2d 45, 71, 456 P.3d 894 (2020).

### 1. *Not Specific Intelligence Information*

The John Does argue that under *King Cnty. v. Sheehan*, 114 Wn. App. 325, 57 P.3d 307 (2002), the level one sex offender information sought by Hart is "intelligence information" because it is "compiled specifically to identify and monitor a specific group of people." Br. of App. at 6. We disagree.

In *West v. City of Tacoma*, we narrowly defined "intelligence information" as "gathering or distributing secret information, information about an enemy, or conclusions drawn from such information." 12 Wn. App.2d at 73. We, however, further held that the adjective "specific" modifying "intelligent information" creates an even narrower interpretation of the exemption.

8

*Id.* We have defined "specific" as "disclosing particular methods or procedures, or gathering or analyzing intelligence information." *Id.*

In *West*, West made a PRA request to the City of Tacoma for records regarding cell site simulator (CSS) technology.[9] *West*, 12 Wn. App.2d at 51. The City provided West with those records but redacted the make and model names under an erroneous interpretation of the specific intelligence information exemption. *Id.* at 76. The superior court agreed with the City, and we reversed in favor of West, reasoning that the redacted information would only reveal the "what" but not the "when or how" the technology was used, and therefore was not "specific" because it did not reveal any particular investigative technique. *Id.* at 74.

Here, Hart requested blanket disclosure of the biographical information and descriptions of offense summaries for level one sex offenders that the sheriff collects under RCW 9A.44.130.[10] Although that information may arguably be "intelligence information," it is not

---

[9] CSS technology is a surveillance technique whereby law enforcement mimics wireless carrier cell towers to cause a subject's cell phone to connect and send cell phone signal data to law enforcement in order to triangulate a cell phone's location. *West*, 12 Wn. App.2d at 49 n.1.

[10] RCW 9A.44.130(2)(a) requires persons residing in Washington who have been convicted of a sex offense or kidnapping to register with the county sheriff, which includes providing their "(i) [n]ame and any aliases used; (ii) complete and accurate residential address or, if the person lacks a fixed residence, where he or she plans to stay; (iii) date and place of birth; (iv) place of employment; (v) crime for which convicted; (vi) date and place of conviction; (vii) social security number; (viii) photograph; and (ix) fingerprints."

Sex offender registration was mandated under the Community Protection Act of 1990 (chapter 71.09 RCW), enacted because "sex offenders often pose a high risk of reoffense, and that law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders who live within the law enforcement agency's jurisdiction." LAWS OF 1990, ch. 3, § 401.

"specific" as we held in *West*. These records do not reveal any particularly secret information, conclusions, methods, techniques, or analysis, and so, they do not constitute "specific intelligence information" under the Section 240 exemption. Because the public records here are not "specific intelligence information" and are therefore not exempt, we need not decide if "nondisclosure . . . is essential . . . for the protection of any person's right to privacy." RCW 42.56.240(1).

We recognize that the findings made by the trial court acknowledged there is a risk that the release of this nonexempt information may increase the likelihood of an invasion into the John Does' private lives. The John Does also present a cogent and persuasive policy argument against the broad release of this type of information on the grounds that it would frustrate the safety and rehabilitation of sex offenders.[11] However, our Supreme Court has held that even though "the misuse of personal information is an important policy objective, we must recognize that the PRA embodies a critical public policy in its own right. . . . [W]e must exercise judicial restraint and leave it to the legislative branch to consider how best to address the growing concerns about public records being misused for improper or criminal purposes." *Washington Pub. Employees Ass'n*, 194 Wn.2d at 501.

---

[11] The John Does argue that the broad release of sex offender information leads to difficulty finding employment and housing, family tension, and violence, which leads to what the Sex Offender Policy Board describes as "instability and inability to re-integrate [that] can become a criminogenic factor that contributes to a *highe*r risk of recidivism and a potential *decrease* in public safety." Br. of Appellant at 8 (quoting WASHINGTON STATE SEX OFFENDER POLICY BOARD, CHAPTER 261, LAWS OF 2015: FINDINGS AND RECOMMENDATIONS BY THE SEX OFFENDER POLICY BOARD 12 (Dec. 2015)).

No. 52845-2-II

In conclusion, the trial court did not err when it denied injunctive relief to the John Does because the specific intelligence information exemption under the PRA does not apply to the level one sex offender records in this case.  We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Veljacic, J.

11