[No. 17590-1-III.    Division Three.    July 13, 1999.]

SPOKANE RESEARCH & DEFENSE FUND, *Respondent*, v. THE
CITY OF SPOKANE, ET AL., *Defendants*, CITIZENS REALTY
COMPANY, ET AL., *Appellants*.

*Duane Michael Swinton* of *Witherspoon, Kelley, Davenport & Toole*; and *Kelly Ann Nolen* of *Gonzaga University School of Law*, for appellants.

*Stephen Kerr Eugster* of *Eugster, Haskell*, for respondent.

*James C. Sloane, City Attorney, Stanley Martin Schwartz*, and *James Anthony Richman, Assistants*; and *Thomas F. Kingen* of *Perkins Coie L.L.P.*, for defendants.

BROWN, J. — Spokane Research & Defense Fund (SRDF) sought documents under the Public Records Act (Act) from the City of Spokane. Citizens Realty Company and Lincoln Investment Company (Developers) intervened. The City and the Developers of River Park Square (RPS) in downtown Spokane claimed the documents were not public records and, even if they were public records, exemptions applied. The trial court held the documents were "public records" but entitled to a limited exemption while a Housing and Urban Development (HUD) loan application was still pending. Other exemptions from disclosure were rejected. The Developers appealed, contending the trial court erred by deciding: (1) the documents were public records; (2) the financial and commercial exemption precluded disclosure temporarily; (3) the documents were not exempt as research data; and (4) the documents were not exempt from disclosure as trade secrets. On cross appeal, SRDF contends the trial court erred by not awarding it attorney fees or penalties. We affirm.

## FACTS

The Developers are engaged in the redevelopment of RPS, a shopping center in downtown Spokane. Nordstrom is the anchor tenant. The Developers are contributing $75 million to the project. In order to facilitate the financing, the city council adopted a resolution in 1995 authorizing the City to apply for an Economic Development Initiative (EDI) grant and an economic development loan guaranteed by HUD. Under the HUD program, the City passes federal funds to the Developers for use in the project. The City guaranteed the loan as part of the process. In furtherance of the project the City vacated a portion of Post Street.

A City ordinance passed to facilitate the project permits a nonprofit foundation to issue bonds to finance the renovation of the RPS garage. The foundation will lease the garage to the Spokane Public Development Authority (PDA) created by the City. The PDA will operate the garage until the bonds are paid off, then the City assumes ownership.

The Developers assigned the Nordstrom lease to the City to partially secure the loan as part of the HUD application package. HUD requested a credit analysis. The City contracted with three Gonzaga University professors to perform the credit analysis. The City and professors signed a confidentiality agreement with the Developers for the pro formas delivered to facilitate the professors' analysis. The pro formas reportedly relate to lease terms and financial analysis and are claimed to be proprietary. For ease of discussion, we will refer to the professors' work as credit studies. Separate versions of the credit studies were prepared, confidential and not confidential.

The City also hired accountants to conduct financial studies of cash flow and project feasibility. These were also used to facilitate the HUD loan. The accountants also signed confidentiality agreements covering the Nordstrom lease terms and the pro formas. A limited number of City employees reviewed the Nordstrom lease, pro formas, and apparently other documents claimed as proprietary by the Developers to assist the City in negotiating and completing the loan documents.

An addendum to an accountants' report claimed to contain proprietary information was previously considered in *CLEAN v. City of Spokane*, 133 Wn.2d 455, 947 P.2d 1169 (1997), *cert. denied*, 525 U.S. 812 (1998). The court in *CLEAN* held the information was exempt from disclosure while the HUD application was pending based on RCW 42.17.310(1)(r), an Act exclusion also urged to be applicable here. For ease of discussion and to avoid confusion with *CLEAN*, we will refer to the Nordstrom lease, the pro formas, and "other documents" not disclosed collectively as "the three items." "Addendum" refers to what the *CLEAN* court considered.

The Developers argue the three items include information about rental rates, projected tenant sales and tenant improvement allowances and are proprietary. They explain that the lease includes information regarding sales, rental rates, percentage rent break points and tenant improvement allowances and is not generally disclosed. The three items are not part of our record. The trial court did not inspect them *in camera.*

Pursuant to the Act, SRDF requested the release of many documents from the City. The City, before litigation, provided SRDF with many of the documents requested. Dissatisfied, SRDF filed suit. The Developers intervened, contending along with the City, that the requested documents were not public records, and if so, they were exempt from disclosure by one of several exemptions. Many documents were eventually disclosed, but the three items remain in dispute.

After a show cause hearing, the trial court relying on *CLEAN* ruled the three items were exempt from disclosure as long as the HUD loan was "pending." The court, after additional briefing, decided the HUD loan would no longer be "pending" when the City received a disbursement of funds from HUD. The court did not award SRDF its attorney fees or penalties. Motions for reconsideration by SRDF and the Developers were denied. The Developers appealed. SRDF cross-appealed. It appears from oral argument that the loan may no longer be pending.

## ANALYSIS
### A. Public Records

The issue is whether the trial court erred by deciding the disputed three items were "public records" within the meaning of the Act.

Preliminarily, SRDF contends affidavits of Mark Turner, Michael Adolfae and David Mackie may not be considered on appeal. SRDF argues the trial court did not consider the affidavits because they were submitted after the briefing

deadline. *See Dioxin/Organochlorine Ctr. v. Department of Ecology*, 119 Wn.2d 761, 771, 837 P.2d 1007 (1992).

We treat the challenged affidavits as cumulative to the gist of Robert Robideaux's affidavit as suggested by counsel for the Developers at argument below. Additionally, the findings and conclusions indicate the trial court reviewed all documents before entry of the final papers. Even though not initially considered at argument, under these circumstances, we will consider them. *See Chadwick v. Northwest Airlines, Inc.*, 33 Wn. App. 297, 304 n.4, 654 P.2d 1215 (1982) (under certain circumstances an appellate court may consider an affidavit stricken by the trial court), *aff'd*, 100 Wn.2d 221 (1983).

Our review is de novo. *Progressive Animal Welfare Soc'y v. University of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (*PAWS*). The Act's disclosure provisions should be liberally construed and its exemptions narrowly construed. *Id.* at 251 (citing RCW 42.17.010(11); RCW 42.17.251; and RCW 42.17.920).

Generally, the Act requires disclosure of public records by governmental entities upon request unless exempted. *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997). "A 'public record,' subject to disclosure under the Act 'includes [1] any writing [2] containing information relating to the conduct of government or the performance of any governmental or proprietary function [3] prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics . . . .' " *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 746, 958 P.2d 260 (1998); *see* RCW 42.17.020(36).

The Developers contend the three items were not public records because the documents did not relate to the conduct or performance of government. We disagree. The information at issue relates to the conduct of government and the performance of governmental functions. The City, in seeking the HUD loan, has become a participant and facilitator in the development project. The City is loaning the HUD money to the Developers. The City's involvement is for the

governmental purpose of fostering the economic development of the downtown area and promoting job and tax revenue growth.

■ The Developers also contend the three items are not public documents because the City did not "use" them as required by the Act. A court's task is to give effect to the intent and purpose of the Legislature as expressed in the statute. *See Welch v. Southland Corp.*, 134 Wn.2d 629, 633, 952 P.2d 162 (1998). If the statute is unambiguous then its meaning is derived from its language alone. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). In the absence of a specific statutory definition, words used in a statute are given their ordinary meaning. *Washington State Coalition for the Homeless v. Department of Soc. & Health Servs.*, 133 Wn.2d 894, 905, 949 P.2d 1291 (1997).

The Nordstrom lease is partial security for the HUD loan. The City's consultants were hired to produce credit studies for the purpose of negotiating and facilitating the financial process between the Developers, the City, and HUD. The same can be said for the work produced by the accountants. All were thus "used" to further the governmental end. In essence, the City employed the three items in part to advance the private interests of the Developers. The City pledged public credit as part of the project to accomplish the stated consonant public purposes. This type of partnership between business and government is intended in the development process. In view of these facts, the City has clearly used the three items according to the ordinary meaning of this word.

■ The term "use" has been recently examined in the Court of Appeals Division Two: "A document relating to a governmental function is 'used' by the agency if it is applied to a given purpose or instrumental to an end or process." *Concerned Ratepayers Ass'n v. Public Util. Dist. No. 1*, 93 Wn. App. 219, 231, 968 P.2d 6 (1998), *review granted*, 137 Wn.2d 1013 (1999). Evidence that an agency "merely reviewed, evaluated, or referred to the document is insuf-

ficient to establish 'use'." *Id*. at 231-32. Here much more is involved. The three items were not merely part of the HUD loan application, they were significant to the City's decision to pledge public credit and guarantee the loan. Thus, they were essential components of governmental decision making. Therefore, we conclude the Nordstrom lease, pro formas, and other documents are public records.

## B. Loan Application Records Exemption

█ The issue is whether the trial court erred by deciding the exemption provided under RCW 42.17.310(1)(r) was applicable to the three items and limited to the time while the HUD loan was pending. The Developers contend the exemption is permanent. SRDF contends the loan is no longer pending or alternatively that redaction should have been ordered.

RCW 42.17.310(1)(r) exempts: "Financial and commercial information and records supplied by businesses or individuals . . . during application for economic development loans or program services provided by any local agency." In *CLEAN v. City of Spokane*, 133 Wn.2d 455, 947 P.2d 1169 (1997), *cert. denied*, 525 U.S. 812 (1998), the trial court exempted under RCW 42.17.310(1)(r) the disclosure of an addendum to a report prepared for the City related to the same project and HUD loan. The Court affirmed, saying: "The addendum is exempt from disclosure under RCW 42.17.310(1)(r) because the project's HUD loan was pending at the time the trial court made its ruling." *Id*. at 475. Notably, the addendum contained a summary of the Nordstrom lease. We conclude *CLEAN* controls here. Furthermore, SRDF fails to demonstrate the unreasonableness of the trial court's decision that the receipt of funds signifies loan application completion. Thus, we conclude the trial court did not err when interpreting or applying RCW 42.17-.310(1)(r).

## C. Research Data Exemption

█ The issue is whether the trial court erred by decid-

ing the RCW 42.17.310(1)(h) exemption for research data did not apply to the three items.

The Act exempts from disclosure: "Valuable . . . research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss." RCW 42.17.310(1)(h). The purpose of this provision is to prevent unfair private gain by exploiting potentially valuable intellectual property placed in the public domain for a public benefit. *PAWS*, 125 Wn.2d at 255. We focus on whether both private gain and public loss would result. *See Servais v. Port of Bellingham*, 127 Wn.2d 820, 832, 904 P.2d 1124 (1995); *PAWS*, 125 Wn.2d at 255.

■ The term "research data" means "a body of facts and information collected for a specific purpose and derived from close, careful study, or from scholarly or scientific investigation or inquiry." *Servais*, 127 Wn.2d at 832. In *Servais*, the court applied this definition to a consultant's cash flow analysis for the Port. The analysis consisted of projected cash flows, occupancy figures and revenue figures for potential hotel developments. *Id.* at 831. The information was meant for use as a basis for the Port's negotiations with potential lessees. *Id.* The *Servais* court held the analysis was exempt, reasoning:

> The cash flow analysis was prepared to provide the Port with data it could use in negotiations with developers. That portion of the study should remain exempt under RCW 42.17.310(1)(h) to permit the Port to conduct negotiations in the best interests of the public and to perform its statutory duties.

*Id.* at 833.

First, the Nordstrom lease does not meet the definition of research data because it is simply a contract outlining the obligations of the parties. It may be the end product of research, but it would not disclose the research. However, the pro formas and other documents may contain or be research datas. Without an *in camera* inspection our analysis is necessarily limited.

Nevertheless, the disclosure must result in both private

gain *and* public loss. *See Servais*, 127 Wn.2d at 832. The trial court concluded public loss was not shown. We agree. Unlike in *PAWS* and *Servais*, the City has not indicated a public loss if the pro formas or other documents were disclosed following the loan application process. The City's uses appear limited to completed decision making, negotiations, and facilitation of the loan application, nothing more. The City's remaining responsibilities are related to the ministerial functions incident to oversight of the completed project. Accordingly, we conclude the three items are not research data exempt from disclosure under RCW 42.17-.310(1)(h).

■ We note in passing that the trial court relied upon the representations of the parties about the contents of the three items as a basis for decision making. Although no error is claimed, the better practice is to follow the procedure used by the trial court in *CLEAN* and conduct an *in camera* inspection. *In camera* inspection enhances the trial court's ability to assess the nature of the documents, decide applicable exemptions, and perform necessary redaction.

### D. Trade Secret Exemption

The issue is whether the trial court erred by deciding the three items were not trade secrets under the Uniform Trade Secrets Act (UTSA), RCW 19.108, and thus, concluding they were not exempt from disclosure under the "other statute" provisions of RCW 42.17.260(1).

■■ The UTSA qualifies as an "other statute" for our purposes. *PAWS*, 125 Wn.2d at 262. The Developers have the burden of proving a trade secret. *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 749, 958 P.2d 260 (1998). The relevant trade secret definition is "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known . . . and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." RCW

19.108.010(4). To be a trade secret, information must be "novel" in the sense that the information must not be readily ascertainable from another source. *See Confederated Tribes*, 135 Wn.2d at 749; *Machen, Inc. v. Aircraft Design, Inc.*, 65 Wn. App. 319, 325-26, 828 P.2d 73, *review denied*, 120 Wn.2d 1007 (1992).

A lease is not inherently novel. Neither the formula, pattern, method, technique or process from which the pro formas and studies were derived are shown to be novel. The pro formas and studies from the professors and accountants are argued as though they are compilations and, thus, require more discussion.

The City, not the Developers, requested the credit and financial studies from the professors and accountants for two purposes. First, for the City to investigate the credit and financial strength of the proposal for city decision making and negotiating. Second, for the City to use it to obtain favorable consideration of the HUD loan application. Both are public purposes that may incidentally advance the Developer's private interests. It is illogical for the Developers to claim the studies were at the outset trade secrets in this context because the studies were produced for the City, not the Developers. If any conflict exists between the Act and the UTSA, it is resolved by the application of RCW 42.17.920 that provides the Act is to be liberally construed with conflicts between the Act and other statutes resolved in favor of the Act. *PAWS*, 125 Wn.2d at 262.

Furthermore, the Developers' argument lacks a factual basis because the opinions claiming harmful effect are argumentative assertions, thus merely conclusory. *See US West Communications, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 715 (Iowa 1993). For example, Mr. Robideaux's affidavits offer no independent factual basis for determining resultant harm. An *in camera* inspection may have shed light on this problem.

Finally, the Developer's efforts to maintain secrecy were not reasonable under the circumstances. Secrecy for the lease is not possible in the event of default because the

lease will be disclosed. It is difficult to assess the extent the pro formas have been incorporated into the studies or other documents without a record developed from an *in camera* inspection. We resolve this potential conflict in favor of disclosure by the application of RCW 42.17.920.

## E. Redaction

The issue is whether the trial court erred by not immediately redacting the Nordstrom lease and addenda pursuant to RCW 42.17.310(2).

We were led to believe at argument that the loan is no longer pending under the trial court's definition. If so, the issue is moot. Nonetheless, in *CLEAN*, the trial court sealed a confidential addendum. On appeal, the court affirmed the trial court's decision. *CLEAN*, 133 Wn.2d at 475. The sealed addendum contained confidential financial and commercial information provided by the Developers and apparently included a summary of the lease. Here, we are again handicapped without the benefit of a record derived from an *in camera* inspection. But in light of *CLEAN*, we conclude the trial court properly decided to exempt temporarily the documents in their entirety. Moreover, redaction is now unnecessary if HUD's first payment has indeed been received.

## F. Attorney Fees

█ The issue is whether the trial court erred when it decided SRDF did not prevail below in order to qualify for an award of attorney fees under RCW 42.17.340(4). Additionally, SRDF asks for attorney fees for this appeal.

Any person who prevails in an action seeking disclosure of public records under the Act is entitled to attorney fees. *See PAWS*, 125 Wn.2d at 271; RCW 42.17.340(4). "If the trial court determines that attorney fees are appropriate, the award should relate only to that which is disclosed and not to any portion of the requested documents found to be exempt . . . ." *Limstrom v. Ladenburg*, 136 Wn.2d 595, 616, 963 P.2d 869 (1998).

SRDF claimed before the trial court that the Nordstrom lease and addenda were not exempted under the Act. Although some exemptions did not apply, the trial court ruled ultimately that the documents were exempt from disclosure, even though temporarily. Thus, SRDF is not entitled to attorney fees under *Limstrom* or *CLEAN* because the requested documents were exempt when requested. For the same reasons penalties are not proper.

SRDF has not prevailed on its cross-appeal; no attorney fees are merited. The trial court's holding that the requested records are temporarily exempt is unchanged; no attorney fees are merited. SRDF asks us to award attorney fees and penalties even though it has not improved its position from the trial court because it claims it prevailed without obtaining disclosure. This same type of argument has been rejected in *CLEAN*, 133 Wn.2d at 475. We also decline to fashion a remedy not permitted by law.

## CONCLUSION

We agree with the trial court that the three items are public records under the circumstances here. We hold the trial court did not err in deciding the three items were temporarily exempt under RCW 42.17.310(1)(r) as loan application records. We agree the other exemptions for research data and trade secrets are inapplicable based on this limited record.

Affirmed.

KURTZ, A.C.J., and KATO, J., concur.

Reconsideration denied September 3, 1999.

Review denied at 140 Wn.2d 1001 (2000).