FILED
COURT OF APPEALS
DIVISION II

2014 NOV 25 AM 11: 20

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

BELO MANAGEMENT SERVICES, INC., a Delaware corporation; KIRO-TV, INC., a Delaware corporation; TRIBUNE BROADCASTING SEATTLE, LLC, a Delaware limited liability company; and CBS CORPORATION;

Respondents,

v.

CLICK! NETWORK, a Department of Tacoma Public Utilities Division of the CITY OF TACOMA; and TACOMA NEWS, INC.;

Appellants.

No. 45577-3-II

PUBLISHED OPINION

MELNICK, J. — Tacoma News, Inc. appeals the trial court's order enjoining the disclosure of unredacted retransmission consent agreements (RCAs) between Click!, a cable system owned by the City of Tacoma (the City), and five broadcasters. The court ruled that the pricing information portions of the RCAs were trade secrets exempt from disclosure under the Public Records Act[1] (PRA). Tacoma News argues that the RCAs do not contain trade secrets, the court should have conducted in camera review of the unredacted RCAs, the broadcasters did not prove the requirements for an injunction under the PRA, the injunction is overbroad, and it is entitled to attorney fees and costs. The broadcasters argue that we should uphold the injunction because the RCA pricing information qualifies as trade secrets or, alternatively, federal regulations exempt the pricing information from PRA disclosure.

---

[1] Ch. 42.56 RCW.

We hold that the RCA pricing information is not a trade secret and that the broadcasters failed to meet their burden of proving that the non-cash compensation information in the agreements qualifies as a trade secret. Additionally, the federal regulations cited by the broadcasters do not qualify as an "other statute" under the PRA which exempts the pricing information from disclosure. Moreover, the broadcasters failed to establish the requirements for an injunction under the PRA. Accordingly, the trial court erred when it enjoined disclosure of the unredacted records. Tacoma News is not entitled to attorney fees under the PRA because the private broadcasters, rather than the City, opposed the disclosure. We reverse and vacate the injunction.

FACTS

This case involves whether pricing information in contracts between the City-owned cable system, Click!, and several broadcasters should be disclosed under the PRA. Cable systems must obtain express consent from broadcasters and pay license fees to retransmit the broadcasters' shows. Cable systems and broadcasters enter into RCAs that include license fees. The fees are negotiated between the individual broadcasters and the cable systems. Both the cable systems and the broadcasters consider the licensing fees confidential. The amount paid in fees is not shared with third parties. These figures are only known, on a need to know basis, by a few employees within each party's organization. These employees are required to keep the information confidential. Clerk's Papers (CP) at 36. T between Click! and the broadcasters, however, specifically put the broadcasters on notice that the RCA's terms are subject to potential disclosure under chapter 42.56 RCW.

Click! had difficulty negotiating the 2013 RCAs with one of the broadcasters, Fisher Communications. As a result, Click! customers were unable to view the channels broadcast by

2

Fisher. In response to this situation, Tacoma News filed a public records request with Click! seeking copies of the current RCAs between Click! and "all broadcast entities." CP at 43. The City determined that there were no applicable PRA exemptions and it notified the broadcasters that it intended to release the RCAs to Tacoma News.[2] The broadcasters sought an injunction prohibiting the City and Click! from releasing the RCAs. The broadcasters claimed that the RCAs contained pricing information that qualified as a trade secret.

The broadcasters and Click! submitted affidavits and declarations stating that they considered the rebroadcast fee information confidential. The broadcasters alleged that they would be harmed by disclosure. They claimed that other cable systems would use the disclosed fees Click! paid to negotiate lower fees for themselves. The broadcasters stated that rebroadcast fees are a significant and growing portion of their revenue. The broadcasters claimed that they would not have a similar opportunity to discover the fees other cable systems paid because most cable systems are privately-owned and not subject to the PRA, which would put them at a disadvantage in negotiating RCAs. Additionally, both the broadcasters and Click! stated that disclosure would harm Click! and the public because it would discourage broadcasters from contracting with Click! because Click! could not promise confidentiality, it would likely raise Click!'s fees because the broadcasters would use the highest disclosed fee as a baseline, and the preceding issues would result in fewer available channels and increased rates for Click! customers.

---

[2] At the initial hearing, the City stated, "[F]rom a business standpoint [C]lick! finds the release of these contracts, specifically the pricing, to be highly objectionable. This is commercially sensitive information; however, we are a public agency, and under the [PRA], our evaluation is that we are unlikely to successfully assert Uniform Trade Secret Act exemption or any other exemption under the [PRA]." Report of Proceedings (RP) at 14. The City and Click! did not file briefs in this appeal.

The trial court ruled that the RCAs contained trade secrets and enjoined Click! from releasing the RCAs and any related records. Tacoma News moved for reconsideration. It argued that the court should review the unredacted RCAs in camera and, if it still found that the agreements contained trade secrets, redact the exempt information and release the redacted RCAs. The court granted the motion for reconsideration and set a hearing to establish the process by which it would receive and review the unredacted RCAs. The court further ordered the parties to submit briefing regarding the sealing of the unredacted RCAs. The court clarified that the injunction was still in effect and that the City must submit RCA-related records to the broadcasters for approval before releasing the records to any requesters.[3]

After a hearing, the trial court determined that in camera review was unnecessary in light of the broadcasters' affidavits and declarations which described the redacted information. Based on the affidavits and declarations, the court concluded that the redactions contained trade secrets that were exempt from disclosure under the PRA. The court never reviewed unredacted copies. Instead, the court ordered Click! to release the records with the redacted information.

Tacoma News appealed to our Supreme Court. That court denied direct review and transferred the case to us.

ANALYSIS

I.    STANDARD OF REVIEW

The PRA requires each agency to make public records available for public inspection unless the record falls within the specific exemptions of the PRA or other statute. RCW 42.56.070(1). The PRA should be "'liberally construed to promote full access to public records,

---

[3] After the broadcasters sought an injunction, unrelated third parties began requesting RCA information from the City.

and its exemptions are to be narrowly construed.'" *King County Dep't of Adult & Juvenile Det. v. Parmelee*, 162 Wn. App. 337, 350, 254 P.3d 927 (2011) (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997)). Persons who are named in the record or to whom the record pertains may move the trial court to enjoin the release of the records. RCW 42.56.540; *Parmelee*, 162 Wn. App. at 350. The court may enjoin production of requested records if it finds that production would not be in the public's interest and would substantially and irreparably damage any person or vital government function. RCW 42.56.540.

We review injunctions issued under the PRA de novo.[4] *Parmelee*, 162 Wn. App. at 351. Where, as here, the record consists only of documentary evidence, we stand in the same position as the trial court. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994).

## II. TRADE SECRET EXEMPTION

The broadcasters do not argue that the RCAs are not public records subject to the PRA. Rather, they argue that the records are exempt from disclosure. The trial court concluded that the pricing information in the RCAs was exempt as a trade secret. Tacoma News disagrees. We hold that the broadcasters failed to prove that the fees are a trade secret.

A public record is exempt from disclosure under the PRA if the record falls within an "other statute" that exempts or prohibits disclosure of specific information. RCW 42.56.070(1).

---

[4] The broadcasters argue that we should use the abuse of discretion standard to review the court's decision to grant an injunction. They cite *Resident Action Council v. Seattle Housing Authority*, 177 Wn.2d 417, 428, 300 P.3d 376 (2013). But the trial court in that case did not grant an injunction under RCW 42.56.540. *Resident Action Council*, 177 Wn.2d at 445-46. We review actions under chapter 42.56 RCW de novo. RCW 42.56.550(3); *Resident Action Council*, 177 Wn.2d at 432; *Robbins, Geller, Rudman & Dowd, LLP v. State*, 179 Wn. App. 711, 719, 328 P.3d 905 (2014); *Parmelee*, 162 Wn. App. at 351.

The Uniform Trade Secret Act[5] (UTSA) qualifies as an "other statute" exempting disclosure. *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 262. This statute allows courts to take action to protect trade secrets. *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 262 (citing RCW 19.108.020(3), .050).

> The UTSA defines a trade secret as
>
> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4). The information must be "novel," meaning that it must not be readily ascertainable from another source. *Spokane Research & Def. Fund v. City of Spokane*, 96 Wn. App. 568, 578, 983 P.2d 676 (1999).

The broadcasters have the burden of proving a trade secret. *Spokane Research & Def. Fund*, 96 Wn. App. at 577. Their declarations and affidavits must provide specific, concrete examples illustrating that the pricing information meets the requirements for a trade secret. *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 426, 204 P.3d 944 (2009).

A.     RCA Pricing Information

Tacoma News contends that the RCA pricing information not trade secrets because they are not the type of information protected as a trade secret and they are not subject to reasonable efforts to maintain secrecy. Tacoma News further contends, and the broadcasters' conclusory statements are insufficient to establish, that the pricing information is novel. We agree.

---

[5] Ch. 19.108 RCW.

We recently dealt with a similar situation in *Robbins, Geller, Rudman & Dowd, LLP v. State*, 179 Wn. App. 711, 328 P.3d 905 (2014). There, a law firm attempted to enjoin the Attorney General's Office from disclosing the firm's fee proposal and insurance information under the PRA. *Robbins*, 179 Wn. App. at 717-18. The firm argued that the information constituted a trade secret that was exempt from PRA disclosure. *Robbins*, 179 Wn. App. at 723-24. It stated that its approach to fee setting was unique, specific to each client and case, and required significant time and effort to formulate. *Robbins*, 179 Wn. App. at 723. And it contended that the release of this information would give its competitors an unfair advantage by allowing them to outbid the firm for future work. *Robbins*, 179 Wn. App. at 723-24.

We disagreed. *Robbins*, 179 Wn. App. at 724. We determined that the firm failed to show that its fee schedule and insurance information differed significantly from its competitors'. *Robbins*, 179 Wn. App. at 724. Additionally, the firm had previously publicly released similar fee information. *Robbins*, 179 Wn. App. at 724. Thus, the firm's assertions of uniqueness and competitive disadvantage were conclusory and the information was not a trade secret. *Robbins*, 179 Wn. App. at 724.

Similarly, here, the broadcasters' allegations of harm are too conclusory and speculative. They make the same argument as the firm in *Robbins*: Release of this information would give competitors an unfair advantage. This reason alone is insufficient to prove that the information is a trade secret. The broadcasters have not proven that their prices have independent economic value to their competitors or other cable systems. As the broadcasters concede, every negotiation is different. Markets and cable systems vary. Prices fluctuate over time. Thus, it does not follow that the other cable systems could viably argue that they are entitled to the same price as a cable system in a different market during a different time period. Moreover, it is not clear from

the record that Click!'s fees would set a ceiling on fees because the record does not state that Click!'s fees are consistently lower than the fees paid by other cable systems. And, the court did not see the unredacted records to make an independent assessment.

Additionally, the broadcasters failed to show that their RCA fees are unique. Like the firm in *Robbins*, the broadcasters merely presented conclusory and speculative statements arguing that their approaches are unique and specific to each negotiation. There is no support for this statement because the broadcasters stated that their fees are unique, but they admit that they have not seen the other broadcasters' RCAs. And the unredacted RCAs are not in the record. The City, the only party to view all of the unredacted RCAs, determined that no PRA exemption applied to bar disclosure of the RCAs. The broadcasters' assertions are conclusory and speculative and we hold that the RCA prices are not trade secrets.

The broadcasters provide no authority compelling us to hold that contract prices are trade secrets. Both sides cite to federal cases discussing the Freedom of Information Act (FOIA),[6] but this case does not involve federal agencies and Washington courts have recognized that FOIA "differs in many ways" from the PRA. *Cowles Publ'g Co. v. Wash. State Patrol*, 109 Wn.2d 712, 731, 748 P.2d 597 (1988); *Robbins*, 179 Wn. App. at 730-31.

B.    Non-cash compensation

The trial court also allowed the broadcasters to redact non-cash compensation information from the disclosed RCAs. We hold that this is error because the broadcasters failed to meet their burden of establishing that these provisions are a trade secret.

As stated above, the broadcasters have the burden of proving that information is a trade secret. *Spokane Research & Def. Fund*, 96 Wn. App. at 578. Although the trial court has

---

[6] 5 U.S.C. § 552.

8

discretion to review documents in camera in some instances, "'the only way that a court can accurately determine what portions, if any, of the file are exempt from disclosure is by an in camera review.'" *Limstrom v. Landenburg*, 136 Wn.2d 595, 615, 963 P.2d 869 (1998) (quoting *Newman v. King County*, 133 Wn.2d 565, 583, 947 P.2d 712 (1997) (Alexander, J., dissenting)); *see also Overlake Fund v. City of Bellevue*, 60 Wn. App. 787, 797, 810 P.2d 507 (1991) (stating that in camera review may be necessary "when the court cannot evaluate the asserted exemption without more information than that contained in the . . . affidavits.").

Here, one of the broadcasters, Fisher, redacted portions of its RCA that related to "non-cash compensation." CP at 447. It is unclear from the affidavits what non-cash compensation entails. The broadcasters resisted in camera review of the unredacted RCAs, despite the trial court's assurances that the records could be sealed. Without more information than what is contained in the affidavits, we are unable to say that the broadcasters met their burden of proving that the non-cash compensation information is a trade secret.

### III. FEDERAL REGULATION EXEMPTION

The broadcasters alternatively argue that federal regulations qualify as an "other statute" which exempt disclosure under RCW 42.56.070(1). Resp't Belo's Br. at 23. The broadcasters cite 47 U.S.C. § 325(b), which involves consent to retransmission of broadcasting station signals, and 47 C.F.R. § 0.459(a)(1), which allows parties submitting materials to the Federal Communications Commission (FCC) to request that the information "not be made routinely available for public inspection."

In *Ameriquest Mortgage Co. v. Washington State Office of Attorney General*, 170 Wn.2d 418, 440, 241 P.3d 1245 (2010), our Supreme Court determined that the federal Gramm-Leach-

Bliley Act (GLBA)[7] and the Federal Trade Commission (FTC) rule[8] enforcing it qualified as an "other statute" exempting records from disclosure under the PRA. In that case, the GLBA and the FTC rule provided privacy protections to customers of financial institutions. *Ameriquest,* 170 Wn.2d at 424-25. These federal regulations fit within the PRA exemption because they precluded disclosure of specific information or records, namely, customers' nonpublic personal information. *Ameriquest,* 170 Wn.2d at 425, 440.

Contrary to the broadcasters' assertions, the federal regulations the broadcasters cited do not specifically state that RCAs are confidential and protected from disclosure. The regulations do not preclude disclosure of any *specific* information or records. Rather, they allow a party to request that information submitted to the FCC "not be made routinely available for public inspection." 47 C.F.R. § 0.459(a)(1). The PRA "other statute" exemption only applies if the other statute "exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). Thus, the federal regulations the broadcasters cited do not qualify as an "other statute."

Even if the broadcasters had proven that RCA prices are trade secrets or that the federal regulations are an "other statute," the broadcasters still failed to prove the requirements for an injunction under RCW 42.56.540.

IV. INJUNCTION

If a PRA exemption applies, a court can enjoin the release of a public record if disclosure "'would clearly not be in the public interest and would substantially and irreparably damage any

---

[7] 15 U.S.C. §§ 6801–6809.

[8] 16 C.F.R. § 313.

person, or . . . vital governmental functions.'"[9] *Morgan v. City of Federal Way*, 166 Wn.2d 747, 756-57, 213 P.3d 596 (2009) (quoting RCW 42.56.540). The broadcasters cannot show either requirement in this instance.

A. Public Interest

Tacoma News asserts that the broadcasters failed to demonstrate that disclosure would clearly not be in the public's interest. We agree.

Tacoma News persuasively argues that the public has a right to know how Click!, a city-owned enterprise, is spending public funds. The PRA broadly mandates in favor of disclosure:

> The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected.

RCW 42.56.030.

The broadcasters' contrary arguments confuse the public with Click! and its customers. The affidavit from Click!'s general manager alleges public harm in the form of increased cable rates to its subscribers, but not all people who subscribe to cable. Disclosure in this instance is in the public's interest because the information involves expenditure of public funds.

B. Irreparable Damage

Tacoma News next argues that the broadcasters are not a "person" under RCW 42.56.540. They also argue that the broadcasters will not be irreparably damaged by disclosure

---

[9] Tacoma News argues that the trial court may have applied a different injunction standard than the one set out in RCW 42.56.540. But the court's oral ruling shows that it considered whether a PRA exemption applied, the public's interest in disclosing the records, and damage to Click! and the broadcasters. The record does not show that the court used a different standard.

of the RCA prices. We hold that the broadcasters qualify as "persons" but that they failed to show that they would suffer irreparable harm.

Our legislature has construed "person" to include "any public or private corporation or limited liability company." RCW 1.16.080(1). "Person" within the UTSA includes a corporation or other commercial entity. RCW 19.108.010(3). Washington courts have determined that the UTSA provides an exemption for disclosure under the PRA. *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 262. For this exemption to have meaning, it follows that "person" within the context of the PRA must also include commercial entities such as the broadcasters.

But the broadcasters have not shown that they would suffer substantial and irreparable damage. They stated that disclosure of the RCA prices would place them at a disadvantage in negotiating RCAs with other cable systems. They claim the other cable systems would use the disclosed license fees as a maximum, which would cost the broadcasters revenue. As discussed above, these assertions are speculative. The broadcasters failed to show that they should be granted an injunction under the PRA.[10] We hold that this injunction should be vacated. The broadcasters have not shown that the disclosure is not in the public's interest and that it would substantially and irreparably damage any person. We reverse the court and vacate the injunction.

VI.    ATTORNEY FEES

Tacoma News contends that it is entitled to attorney fees and costs. RCW 42.56.550(4) states,

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a

---

[10] Because we vacate the injunction, we need not address Tacoma News argument that the injunction was overbroad. We do note, however, that RCW 42.56.540 enjoins the release of any *specific* public record and the court must make the determination.

public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

This provision is inapplicable when a third party brings an action to prevent disclosure of records the agency has agreed to release but is prevented from releasing because of a court order. *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 757, 958 P.2d 260 (1998). Here, the City determined that no exemptions applied and stated that it intended to release the records. Thus, the broadcasters sought an injunction to prevent the City from releasing the records. Tacoma News has prevailed against the broadcasters, not the City. We deny the request for attorney fees.

We reverse and vacate the injunction.

_____
Melnick, J.

We concur:

_____
Johanson, C.J.

_____
Bjorgen, J.

13