# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| LOVE OVERWHELMING, a Washington non-profit corporation,<br><br>Appellant,<br><br>v.<br><br>CITY OF LONGVIEW, a municipal corporation,<br><br>Respondent,<br><br>and<br><br>RAYLEEN AGUIRRE, an individual,<br><br>Requestor/Respondent. | No. 58830-7-II<br><br><br><br>PUBLISHED OPINION |

PRICE, J. — Love Overwhelming (LO) is a nonprofit organization whose purpose is to support, encourage, and assist unhoused individuals in the greater Longview area. Around 2020, LO was hired by the City of Longview to perform an accounting of a group of unhoused individuals living at a local encampment. The accounting process used "intake" forms to gather potentially sensitive information about the individuals. At some point, a request for the intake forms was made under the Public Records Act (PRA).[1] After learning of the PRA request, LO filed a lawsuit to enjoin the release of the forms.

The superior court dismissed the suit without reaching the merits, determining LO did not have standing under the PRA. The City has since released the intake forms to the requestor.

---

[1] Ch. 42.56 RCW.

LO appeals, contending that it has standing under the PRA under several theories, including that it is a person "named" in the records, that the records "specifically pertain" to it, and that it has associational standing for the unhoused individuals.

The City takes no position on LO's standing. However, the City moves to dismiss the appeal as moot because the intake forms have already been released to the requestor. LO responds that its appeal is not moot because it requested a permanent injunction that would prevent the records from being released in any future requests or, alternatively, because the public interest exception to mootness applies.

We determine that LO's appeal meets the requirements of the public interest exception to mootness. And we hold that LO had standing under the PRA because it was a person named in the records. We reverse the superior court's dismissal of LO's complaint and remand for further proceedings.

FACTS

I. BACKGROUND

Around November 2019, a group of unhoused individuals (individuals) created an encampment near the Longview City Hall. A few months later, the City opened a parcel of its property on Alabama Street for camping, and some of the individuals began staying there. The Alabama Street encampment was intended to be short term, but the individuals were permitted to stay longer when the COVID-19 pandemic began. As the encampment grew, City officials discussed an alternative site for the camp, but no agreement for a different location was reached.

The City decided to initiate a project to create more permanent structures on the Alabama Street property for the individuals and purchased 50 pallet homes for the site. As part of the planning for the project, the City hired LO to conduct an accounting of the individuals living at

the Alabama Street encampment. The intake information was intended to assist the individuals in qualifying for the pallet homes once they were installed.

LO conducted the accounting of over 140 individuals by using specially-designed "intake" forms. LO's name and logo were featured prominently on the forms. And in addition to personal information of the unhoused individuals, most of the completed intake forms contained the names of LO's staff members who gathered the information from the particular individual.

LO told the individuals during the intake form process that their information would be given to the City so the City could consider them for the pallet community and for referrals to welfare services but that their confidentiality would be protected. The individuals signed the consent release forms stating they understood they were releasing their information only to the City and additional releases could happen only with additional written consent, "unless otherwise provided for [by] law[] . . . ." Clerk's Papers (CP) at 35. The consent release forms had spaces to fill in the individual's name, HMIS (homeless management information system) ID number, date of birth, address, and "[o]ther [i]nformation." CP at 35. There were also check boxes to indicate that the individual was releasing information related to alcohol and drug use, psychiatric evaluations, communicable diseases, and other potentially sensitive topics.[2]

The City's project was controversial; it received both public support and opposition. One person who apparently opposed the City's plans to install the pallet homes submitted a public records request for "[a]ll intake forms/evaluations/surveys for the residence/unhoused at the

---

[2] The complete content of the intake forms is unclear from our record. Although LO's declarations discuss the acquisition of sensitive information and the development of a spreadsheet by the City, our record contains only one example of the forms, a release consent form entitled, "Consent to Exchange of Confidential Information." CP at 35. Beyond this one form, our understanding of the content of the intake forms comes from LO's declarations. But we note the City has not contested any of LO's representations.

encampment on Alabama Street of people that reside at [the] encampment." CP at 30 (first alteration in original) (internal quotation marks omitted). The City initially sent the requestor the information in the form of a spreadsheet with the names of the individuals redacted. But the requestor later requested the full, unredacted set of the intake sheets, including the individuals' names.

In January 2023, the City sent LO a notification about the records request. The notification stated that if LO did not obtain an injunction blocking the release of the intake records within 14 business days, the records would be released to the requestor.

II. LOVE OVERWHELMING'S COMPLAINT AND FURTHER PROCEEDINGS

In response to the notification, LO filed a lawsuit for an injunction. LO argued that the information on the intake forms was highly personal and releasing that information could impact the individuals' personal safety when they were already in vulnerable situations. LO also asserted that release of the records would cause LO to suffer substantial and irreparable harm because LO relied on the trust it built with the unhoused community. Not only did LO request that the superior court enjoin disclosure of the records to the particular requestor, but LO also requested a permanent injunction to enjoin the City from disclosing records in response to any future request.

The superior court asked the parties for supplemental briefing on whether LO had standing for its complaint. LO argued that it had standing under the PRA as a " 'person who is named in the record' " or to whom the "requested records 'specifically pertain.' " CP at 62-63 (quoting RCW 42.56.540). LO also argued it had "associational standing" to bring its complaint on behalf of the individuals. CP at 68. The City responded that LO did not have standing under any theory.

The superior court agreed with the City. The superior court dismissed LO's complaint, determining that LO was "not named in the record, nor do any of the records specifically pertain

4

to them" (the superior court's written order did not address associational standing). CP at 101. The superior court ordered that the City "may release records" to the requestor and "the release of records shall not be stayed pending appeal." CP at 101.

LO appeals.

Following the filing of LO's appeal, the City released the records to the requestor. Thereafter, the City moved to dismiss LO's appeal as moot.

## ANALYSIS

### I.  MOOTNESS

The City argues that LO's appeal is moot, contending that because the records have already been released, LO cannot be granted effective relief. LO responds that it could still receive effective relief in the form of a permanent injunction preventing future release of the records. Alternatively, LO argues that the public interest exception to mootness applies. We determine that the public interest exception applies.

We will generally dismiss an appeal if it is moot. RAP 18.9(c). An appeal is moot if "the matter is 'purely academic' such that the court cannot provide effective relief." *Ctr. for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020) (internal quotation marks omitted) (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943 (2006)).

Although moot cases are generally dismissed, we may exercise our discretion to decide a case when there is a substantial and continuing public interest. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 476, 491 P.3d 1012 (2021). We consider three factors when evaluating whether to address an otherwise moot case:

> "(1) the public or private nature of the question presented, (2) the desirability of an authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur."

*Id.* (quoting *Thomas v. Lehman*, 138 Wn. App. 618, 622, 158 P.3d 86 (2007)). We may also consider " 'the likelihood that the issue will escape review because the facts of the controversy are short-lived.' " *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994) (quoting *Seattle v. State*, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983)).

Looking at the three factors relevant to the public interest exception, we conclude LO's appeal of the dismissal of its case based on standing meets the requirements of the exception. The first factor, the public or private nature of the question presented, weighs toward addressing the appeal. Considering the PRA is focused on governmental transparency, whether a person (or entity) has standing under the PRA to litigate public disclosure of records held by the government is self-evidently a public matter. The second factor also weighs toward addressing the appeal; parties and courts could benefit from guidance on the appropriate parameters of PRA standing. And finally, the third factor favors addressing the appeal because of the polarizing character of this particular underlying records request. The City's project was controversial and received significant public attention, and both the unhoused individuals and the type of information gathered about them are apparently the subjects of divergent opinions. With this significant public interest, it is plausible that additional requests for these records could be made.

Moreover, there is the possibility that this issue would likely continue to evade review. Given the superior court's dismissal of LO's complaint at the threshold stage based on standing, if another records request was made for these records, release could occur again before any appeal

6

No. 58830-7-II

could be decided.  Because all of the factors of the public interest exception are met, we consider

LO's arguments.[3]

II.  STANDING BASED ON BEING A PERSON NAMED IN THE RECORDS

LO argues the superior court erred when it concluded that LO did not have standing under

the PRA to challenge the release of the records.  We agree.

We review issues of standing de novo.  *Freedom Found. v. Bethel Sch. Dist*., 14 Wn. App.

2d 75, 85,469 P.3d 364 (2020), *review denied*, 196 Wn.2d 1033 (2021).  We also review actions

under the PRA de novo.  RCW 42.56.550(3).

The PRA specifies who has standing to attempt to enjoin the release of records from a

public records request—persons who are "named in the record" and persons "to whom the record

specifically pertains."  RCW 42.56.540.  The statute provides:

> The examination of any specific public record may be enjoined if, upon motion and
> affidavit by an agency or its representative or *a person who is named in the record
> or to whom the record specifically pertains*, the superior court for the county in
> which the movant resides or in which the record is maintained, finds that such
> examination would clearly not be in the public interest and would substantially and
> irreparably damage any person, or would substantially and irreparably damage vital
> governmental functions.

RCW 42.56.540 (emphasis added).  The term "person" includes organizations and public and

private corporations.  *See Belo Mgmt. Servs., Inc. v. Click! Network*, 184 Wn. App. 649, 662, 343

P.3d 370 (2014).

Here, LO argues it had standing under both parts of RCW 42.56.540—because it was

"named in the record[s]" and because it was an entity to which "the records specifically pertain[]."

---

[3] As noted above, LO alternatively claims its request for a permanent injunction means this case is not actually moot.  Whether a permanent injunction is a remedy available to LO has not been sufficiently briefed on appeal to override our decision to utilize the public interest exception.

We first address whether LO is "named in the records." Clearly, the unhoused individuals were "named in the records"; indeed, the requestor's interest in the records was likely rooted in the names of and details about these individuals. But LO and the names of its employees were also contained in the records. LO's logo was prominently displayed at the top of the release consent form and, according to LO's declarations, on the other intake form documents as well. In addition, the names of the LO employees who conducted the assessments were also included on most of the documents.

The plain language of RCW 42.56.540 requires no more than this; the statute demands no additional qualitative or quantitative characteristics—merely that the person be "named." We are not persuaded that just because the records also carry the names of other people, including the unhoused individuals, that LO cannot be considered named in the records. Nor are we persuaded that the result should be different simply because the sensitive information contained in the records pertains to the individuals, not LO. Simply put, LO is named in the records and, for the purposes of RCW 42.56.540, that is enough for standing.[4] As this basis for standing is sufficient, by itself, to reverse the superior court, we do not further address LO's other arguments for standing, including associational standing.[5]

---

[4] Moreover, reading this standing provision as being inclusive of *any* person named in the record is consistent with the PRA generally. Any other reading would require attempting to gauge the relative importance of the inclusion of the name in the record, including possibly speculating whether the requestor might place importance on that person. Under the PRA, with few exceptions, the motivations and interests of the requestor are irrelevant. *See* RCW 42.56.080(2) ("Agencies shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request . . . ."); *Dawson v. Daly*, 120 Wn.2d 782, 797, 845 P.2d 995 (1993) (prohibiting consideration of "the identity of the requesting party or the purpose of the request" in determining whether a particular record is of legitimate public concern).

[5] We also offer no opinion on the merits of LO's underlying complaint.

CONCLUSION

We deny the City's motion to dismiss based on mootness and hold that LO has standing to enjoin the release of the records because it was a person named in the records. Thus, we reverse the superior court's dismissal of LO's complaint on the basis of standing and remand for further proceedings.

PRICE, J.

We concur:

GLASGOW, P.J.

CHE, J.